**In re Dianne Mannion WEPSIC, Debtor.**

**Dianne Mannion Wepsic, Plaintiff,**

v.

**Jackie Josephson, Defendant.**

Adversary No. 98–90181–H13.
Bankruptcy No. 97–15509–H13.

United States Bankruptcy Court,
S.D. California.

Sept. 1, 1998.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

On April 10, 1998, debtor Dianne Mannion Wepsic ("Wepsic") filed this adversary complaint against Jackie Josephson ("Josephson") to determine the allowance of Josephson's claim and the validity and extent of Josephson's secured status. Wepsic alleged that Josephson violated the Truth in Lending Act ("TILA") and California law[1] and, therefore, sought to avoid Josephson's secured lien on her residence. The parties filed cross motions for summary judgment.

This Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K).

### FACTS

On October 24, 1996, Wepsic obtained a loan from Josephson in the amount of $76,560 which was secured by a second deed of trust on her residence in Del Mar. The purpose of the loan was to pay off an existing second trust deed securing an obligation to Sea Coast Financial in the amount of $26,593.98 and to obtain a substantial amount of cash for her personal use. A California licensed real estate and mortgage broker, John Conlon ("Conlon") assisted the parties with the loan documentation. Wepsic was provided with a number of documents,[2] including *inter alia*, the Truth in Lending Disclosure Statement ("Disclosure Statement"). The loan closed on or about November 1, 1996, with monthly interest payments of $892.56 per month, commencing December 1, 1996. The final payment of one month's interest plus the principal balance was due on December 1, 2003.

1. The Court does not address any violations of California law in this Memorandum Decision because Wepsic failed to cite to any specific law.

2. In making her loan application, Wepsic filled out a Standard FNMA ("Fannie Mae") Uniform Residential Application, form 1003. At that time, initial loan documents were prepared, signed by Wepsic and copies furnished to her, including (1) a Mortgage Loan Disclosure Statement/Good Faith Estimate; (2) a Letter of Explanation/Derogatory Credit; (3) a Fair Lending Disclosure Statement; (4) a Borrower's Certification and Authorization; (5) a Borrower Authorization; and (6) a Purpose of Loan and Cash Out Letter of Explanation. Final loan papers were drawn, including the appropriate note and deed of trust, the Truth and Lending Disclosure Statement, the RESPA Servicing Disclosure, a second revised Uniform Residential Loan Application, an Income Acknowledgment Statement, and an Acknowledgment and Authorization of pre-payment of interest, instructions to escrow, and the final Mortgage Loan Disclosure Statement/Good Faith Estimate.

After payment of the prior second trust deed and fees and costs associated with the loan, Wepsic received net proceeds in cash of $37,176.98. In addition, six months of payments, for payments due December 1, 1996 through May 1, 1997, were held in escrow by Josephson and subsequently credited for the first six months of payments. The loan's interest rate was 13.99% per annum.

Wepsic defaulted when her first payment came due on June 1, 1997. Wepsic also defaulted on her payments to the first trust deed holder causing Josephson to advance $18,137.78 prior to Wepsic filing her bankruptcy.

On October 20, 1997, Wepsic filed her chapter 13 bankruptcy petition. Wepsic initially scheduled Josephson's debt as secured, but on March 28, 1997, Wepsic filed a Notice of Rescission with Josephson regarding the loan agreement between them. Wepsic amended her schedules to reflect the debt owed to Josephson as unsecured in the amount of $48,000.

Wepsic's Del Mar residence is allegedly worth between $1.3 and $1.6 million. [Trial Transcript 16:20–21]. After subtracting the secured obligations on the property, including Josephson's interest, Wepsic has over $500,000 in equity. Wepsic's residence is currently listed for sale.

Josephson is a 54–year–old retired individual who invested a portion of her life savings in this loan.

## DISCUSSION

### A. *STANDARD FOR SUMMARY JUDGMENT.*

Rule 56(c) of the Federal Rule Civil Procedure ("FRCP") made applicable to adversary proceedings by Fed. R. Bankr.P. 7056, provides that summary judgment:

> [S]hall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact[3] and that the moving party is entitled to a judgment as a matter of law.

FRCP 56(c).

The Ninth Circuit Court of Appeals has summarized the standards for granting summary judgment as follows:

> We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Hughes v. U.S.*, 953 F.2d 531, 541 (9th Cir.1992).... The party moving for summary judgment must show by "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ... that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hughes*, 953 F.2d at 541. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or by the depositions, answers to interrogatories, and admissions on file, come forth with specific facts to show that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *see Hughes*, 953 F.2d at 541–42. When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. See *U.S. v. 1 Parcel of Real Property*, 904 F.2d 487, 492 n. 3 (9th Cir.1990) (citing *Marks v. U.S.*, 578 F.2d 261, 263 (9th Cir.1978)).

---

**3.** A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence favoring the non-moving party must be more than "merely colorable." *Id.* When the moving party has carried its burden under the rule, its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Essentially, the question in ruling on a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Hansen v. U.S.,* 7 F.3d 137, 138 (9th Cir. 1993).

Josephson admits to several errors in making the loan,[4] but contends she is entitled to summary judgment because any violations of the TILA were merely technical. Alternatively, Josephson contends she is entitled to reformation of the loan documents to conform to the parties' intentions at the time of contracting.

Wepsic moves for summary judgment on the grounds that there is no issue of material fact with respect to Josephson's violations of the TILA. Therefore, Wepsic alleges she is entitled to rescind the loan transaction as a matter of law.

## B. *Truth in Lending Violations.*

■ The TILA is a disclosure statute, codified at 15 U.S.C. §§ 1601–1667f, requiring the accurate and uniformly computed disclosures of the critical elements of credit cost. *See Rodash v. AIB Mortgage Co.,* 16 F.3d 1142, 1144 (11th Cir.1994) (citation omitted). Generally, creditors must disclose the finance charge, the annual percentage rate ("APR"), and many other terms of the credit transaction. In addition, certain transactions involving real property used as a principal dwelling may be rescinded. 15 U.S.C. § 1635.

In 1969, the Federal Reserve Board ("Board") published an implementing regulation of the TILA known as Regulation Z ("Reg. Z").[5] The Board supplements Reg. Z with official staff commentary.

Reg. Z § 226.1(c) provides that, in general, the TILA applies to each individual or business that offers or extends credit when the following four conditions are met:

1. The credit is offered or extended to consumers.

2. The offering or extension of credit is done regularly.

3. The credit is subject to a finance charge or is payable by a written agreement in more than four installments.

4. The credit is primarily for personal, family, or household purposes.

There apparently is no dispute that the transaction in question falls within the TILA or that Josephson is a creditor falling within the scope of the statute.[6]

### 1. *Inaccurate Disclosures.*

Wepsic contends that Josephson improperly calculated the APR and finance charge. According to Wepsic, the proper APR is 17.717%, the amount financed for the subject loan is $70,959.17 and the finance charge would be $86,194.05. Thus, all three amounts were understated in addition to the understatement of the number of payments (84 versus 85). Wepsic also contends that the Notice of the Right to Rescind was inaccurate because it set forth the wrong date and was presented to Wepsic six days before the Disclosure Statement. Due to these inaccuracies, Wepsic contends that she is entitled to rescission of the loan transaction for non-compliance with the TILA requirements. The Court addresses each contention.

### a. *Understatement of Finance Charge.*

■ 15 U.S.C. § 1605 entitled "Determination of Finance Charge" sets forth which charges must be included in calculating a finance charge and which charges are exempted from computation. The types of charges which are applicable include, but are not limited to, interest, service or carrying charges, loan fees, finder's fees, and fees for investigation or credit report. 15 U.S.C. § 1605(a)(1)-(4). Under 15 U.S.C. § 1605(e), certain items are exempted from the computation of the finance charge including fees for preparation of loan-related documents (sub-

---

**4.** [Josephson's P & A's 5:18–6:11].

**5.** Reg. Z is set forth in 12 U.S.C.Code of Federal Regulations ("C.F.R.").

**6.** 15 U.S.C. § 1602(f) states in relevant part:
a creditor refers only to a person who both (1) regularly extends ... consumer credit which is payable by agreement in more than four installments or for which the payment of a fi-

nance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness.... Any person who ... originates 1 or more mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter.

section (2)) and appraisal fees (subsection (5)). The finance charge is the cost of consumer credit as a dollar amount. Reg. Z § 226.4. There are many exceptions set forth in the regulation.

The finance charge is calculated by subtracting the prepaid finance charges from the face value of the note (creating the amount financed), calculating the amount of interest that would be paid over the life of the loan using the actuarial method, and then adding that amount of interest to the prepaid finance charges to disclose the total finance charge. Josephson stated the finance charge on the Disclosure Statement as $85,681.23. Wepsic contends that it should have been $86,194.05 (a $512.82 difference). [Wepsic's Exh. 2]. According to Wepsic, since the finance charge was understated in the Disclosure Statement and varied more than $100 from the actual finance charge this constitutes a violation of the TILA under 15 U.S.C. § 1605(f).[7]

Josephson disputes the numbers used by Wepsic and claims that Wepsic fails to recognize the distinction between the amount financed and the finance charge in coming up with her number of $86,194.05. In addition, Josephson points out that when Wepsic calculated the finance charge with her computer program, the finance charge showed as $80,592.89. [Wepsic's Exh. 2]. Moreover, in Wepsic's Notice of Rescission [Wepsic's Exh. 6], Wepsic calculated the finance charge as $85,721.06.

Josephson's disclosed finance charge of $85,681.23 is lower than two of Wepsic's numbers, but higher than one. In the event the finance charge disclosed by Josephson is actually overstated, it would fall within the tolerance levels set forth in 15 U.S.C. § 1605(f)(1)(B) and (2)(A). Nonetheless, there is a material issue of fact as to what

the actual finance charge should be. Therefore, summary judgment for both parties is denied on this issue.

### b. *Inaccurate Disclosure of APR.*

Reg. Z § 226.22(a)(1) defines the APR as "a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made." It further provides that the APR shall be determined in accordance with either the actuarial method or the U.S. Rule method.

Similar to the finance charge (which includes the APR), the APR in this case appears to be a moving target which is hardly conducive to a summary judgment motion. The disclosed APR was 17.464. [Josephson's Exh. C]. Josephson subsequently recalculated the APR to be 15.636 [Josephson's Exh. F]. Wepsic calculated the APR at 17.717%. Josephson subsequently recalculated the APR to be 16.1%. In any event, Wepsic stipulated at the hearing that she was "willing to go with the defendant's numbers for this purpose, because they do not solve defendant's problem." [Transcript 15:13–15]. Accordingly, the Court uses Josephson's 15.636 number.

Josephson argues that violation of the TILA occurs when the APR for a loan transaction is *understated* to a borrower, due the fact that understatement may affect the decision of the borrower to obtain a particular loan. Overstatement on the other hand does not damage the borrower. Consequently, disclosure of an APR which is greater than the amount required to be disclosed does not constitute a violation of the TILA. Josephson contends that because the APR for the loan at issue is 15.636% rather than the 17.464% that was disclosed in the Disclosure

---

7. 15 U.S.C. 1605(f) provides:

In connection with credit transactions not under an open end credit plan that are secured by real property or a dwelling, the disclosure of the finance charge and other disclosures affected by any finance charge—

(1) shall be treated as being accurate for purposes of this subchapter if the amount disclosed as the finance charge—

(A) does not vary from the actual finance charge by more than $100; or

(B) is greater than the amount required to be disclosed under this subchapter; and

(2) shall be treated a being accurate for purposes of section 1635 of this title if—

(A) except as provided in subparagraph (B), the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended. . . .

Statement dated October 31, 1996, there is no actionable violation of the TILA.

15 U.S.C. § 1606(c) and Reg. Z § 226.22(a)(2) state the general rule for the accuracy of the APR: the APR shall be considered accurate if it is not more than one eighth of one percentage point above or below the APR determined in accordance with Reg. Z § 226.22(a)(1).[8] The 1995 Amendments Act, however, added 15 U.S.C. § 1605(f) [9], permitting more generous tolerances in credit transactions not under an open-end plan that are secured by real property or a dwelling such as in this case. The new tolerances give creditors a larger margin for error in disclosing the finance charge for closed-end credit transactions. This amendment became effective October 21, 1996, is applicable to mortgage loans consummated on or after September 30, 1995, and, therefore, would apply to this case. The new tolerance applies specifically to loans secured by real property and applies to the disclosed finance charge, as well as any disclosure affected by the finance charge, such as the APR. The Court finds there is no issue of material fact regarding Josephson's disclosed APR which was overstated. Therefore, Josephson's APR was accurate under the guidelines set forth in 15 U.S.C. § 1605(f)(1)(B).[10]

### c. *Understatement of Number of Payments.*

■ In the Disclosure Statement, Josephson disclosed that Wepsic would make 83 payments of $892.56 and one final payment of $77,452.56 (for a total of 84). However, Wepsic contends that the Note, which controls the true number and amount of payments, shows that payments would last from November 1, 1996, through December 1, 2003, with the final payment of the amount financed due on the first of the month (for a total of 86 payments). Wepsic contends that the true number of monthly payments was 85, that the final payment would be $77,-452.56 (the amount disclosed by Josephson), and that the total of all payments would equal $152,427.60 as opposed to the $151,-535.22 disclosed on the Disclosure Statement. Josephson does not dispute that the $152,-427.60 is the correct number. [Decl. of Josephson 6:21]. Wepsic contends that not only was the number of payments inaccurate, but the total of all payments was understated as well.

Josephson argues that it was a "clerical error" that the initial payment stated in the promissory note was November 1, 1996, instead of December 1, 1996. Josephson does not dispute that the number of payments is 85, *i.e.,* 84 payments of interest only in the amount of $892.56 with one final payment in the amount of $77,452.56. Josephson relies on *Veale v. Citibank, F.S.B.,* 85 F.3d 577 (11th Cir.1996) wherein the court found that a discrepancy in the total number of payments set forth in the note did not rise to the level of a TILA violation when the disclosure statement set forth the correct number of payments. However, *Veale* is distinguishable from this case because Josephson has admitted that the total number of payments disclosed on the Disclosure Statement is inaccurate.

Failure to make a material disclosure may trigger the debtor's right to rescind. 15 U.S.C. § 1602(u), defines a material disclosure to include, *inter alia,* the total of payments and the number and amount of payments. Footnote 48 to Reg. Z § 226.23(a)(3) defines material disclosures to mean, *inter alia,* the required disclosure of the total of payments (as required to be disclosed under Reg. Z § 226.18(h)).

Josephson has cited to no provision or authority that would allow a tolerance of an understatement of the total of payments or an inaccurate number of payments. Moreover, Josephson also has not cited to any authority that would treat such inaccuracies

---

8. The parties do not dispute that the loan transaction in question was a regular transaction. Reg. Z § 226.22(a)(3) footnote 46.

9. *See supra* n. 7.

10. The Court notes that it is unable to determine whether the APR is accurate for purposes of rescission under 15 U.S.C. § 1605(f)(2)(A) because there has been no finding that the finance charge was accurate or that the APR resulted from the disclosed finance charge. *See* Reg. Z 226.22(a)(1)-(5).

as "clerical errors" nor has she proved by a preponderance of the evidence that a clerical error in fact occurred. *See* 15 U.S.C. § 1640(c). Therefore, Wepsic's right to rescind would be triggered by these violations. The Court finds that Josephson has violated the TILA by setting forth the inaccurate number and total of payments in the Disclosure Statement.

### d. *Faulty Notice of Right of Rescission.*

■ Wepsic's right to rescind is found at 15 U.S.C. § 1635. Subsection (a) provides:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later ...

Wepsic contends that the Notice of Right of Rescission provided by Josephson was inaccurate. According to Wepsic, the notice failed to comply with the requirements set forth in Reg. Z § 226.23 in that it was dated approximately six days prior to the date of consummation (as shown by the Disclosure Statement) and further failed to accurately count the proper number of business days following the notice in violation of Reg. Z §§ 226.5 and 226.23.

Josephson stated in the Notice of the Right to Rescind that the date of the transaction was October 24, 1996, and that Wepsic must send a notice to rescind no later than midnight October 28, 1996. Wepsic contends that proper date would have been October 29, 1996, because October 24th was a Thursday and only business days are counted.

The Court finds that under these facts the notice of rescission was ineffective. One court noted:

> A consumer has the right to rescind a credit transaction until the third business day following the date of the consummation of the transaction or until delivery of all the disclosures required, whichever is later. The regulations contemplate that a consumer credit transaction is consummated when a contractual relationship exists between a creditor and customer. When the transaction is consummated the creditor must give notice of the right to rescind, which should contain, among other things, ... the date not earlier than the third business day following the date of the transaction on which the customer may cancel.

*Doggett v. County Savings and Loan Co.,* 373 F.Supp. 774, 776 (E.D.Tenn.1973). Josephson gave the Notice of Right of Rescission at least six days prior to consummation of the loan (as shown the October 31, 1996 date on the Disclosure Statement). Therefore, the date of October 28, 1996, as the last day to rescind was misleading in two respects. First, there was no transaction in existence at this time which could have been canceled. Second, even assuming that the notice was timely given, the date of October 28, 1996, as the last day to rescind was incorrect because only business days are counted. Thus, the last date to rescind would have been October 29, 1996. The Court finds that Josephson violated the TILA based on her improper Notice of Right of Rescission.

### C. *Wepsic's Right To Rescind.*

■ Wepsic has exercised her right to rescind and seeks to have the security interest of Josephson declared void. Such a finding would render Josephson's claim unsecured and Josephson would have to return all finance charges. 15 U.S.C. § 1635(b) provides:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any

money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. 15 U.S.C. § 1635(f).

The TILA rescission remedy provides that once the transaction in question is rescinded, Wepsic must return any monies advanced to her by Josephson and Josephson must take steps to release her security interest and return finance and other charges. Some courts have struggled with the possibility of a creditor's forfeiture when an indigent borrower seeks to rescind a loan under TILA. *Trimmel v. General Elec. Credit Corp.*, 555 F.Supp. 264, 267–68 (D.Conn.1983). To avoid

such results courts have exercised their equitable discretion to condition the rescission on the obligor's tender of the monies advanced by the lender. *Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir.1974).[11] The Ninth Circuit has held that a district court errs when it does not do so, at least where the TILA violations are not egregious. *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.1976).

Some bankruptcy courts have also conditioned the use of a consumer-debtor's right to rescind under TILA. *In re Buckles*, 189 B.R. 752 (Bankr.D.Minn.1995); *Lynch v. GMAC Mortgage Corp.*, 170 B.R. 26 (Bkrtcy. D.N.H.1994). These courts equitably conditioned the voiding of a creditor's security interest on the debtor's tender of payment of the loan proceeds.[12]

■ This Court adopts the reasoning set forth in *Buckles* and *Lynch*. "Rescission of contract is to result in the return of both parties to the *status quo ante:* each side is to be restored to the property and legal attributes that it enjoyed before the contract was entered and performed." *Buckles*, 189 B.R. at 764 (citations omitted). Debtor seeks to avoid Josephson's security interest, keep her residence, and pay Josephson 100% of her unsecured claim after all offsets, over the course of thirty-six months or more. Debtor has no unsecured creditors (other than Josephson) and has indicated her property is worth between $1.3 and $1.6 million leaving her with over $500,000 in equity.[13] Wepsic has clearly demonstrated the tendency to default on her installment obligations. Wepsic never made one payment to Josephson on her loan and has entered into adequate protection orders post-petition with both Joseph-

---

**11.** *See also Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1142 (11th Cir.1992); *FDIC v. Hughes Dev. Co.*, 938 F.2d 889 (8th Cir.1991).

**12.** *But see Celona v. Equitable Nat'l Bank*, 98 B.R. 705 (E.D.Pa.1989) (court ordered rescission and treated the remaining lender claim in a chapter 13 reorganization as totally unsecured); *In re Pitre*, 11 B.R. 777 (Bankr.N.D.Ill.1981) (stating as to debtor's duty under 15 U.S.C. § 1635(b) to return money or property, "neither of which can be accomplished by the debtor under the circumstances of this bankruptcy."); *In re Piercy*, 18 B.R. 1004 (Bankr.W.D.Ky.1982) ("holding that conditioning rescission upon the

debtor's payment .... imposes an obligation from which the debtor has been legally freed ... there is a legitimate, legal impediment to the debtor's reciprocal performance ... ").

**13.** On Wepsic's schedules and in opposition to the relief from stay filed by both Josephson and the first trust deed holder, Wepsic alleged that the property was worth approximately $670,000, which would have left her with at least $100,000 of equity in the property. Since that time, Wepsic has found out that the property is evidently worth quit a bit more.

son and the first trust deed holder providing that if Wepsic defaults on her payments to the first trust deed holder, either party will be able to initiate foreclosure proceedings. In addition, Wepsic evidently has her residence listed for sale.

■ Given these facts, the Court finds that Wepsic's proposal of treating Josephson's claim as unsecured, and paying her over the course of three or more years, cuts against the purpose of rescission which is to return both parties to the *status quo ante.* *See In re Cox,* 162 B.R. 191, 195 (Bankr. C.D.Ill.1993). A TILA "violation does not automatically cause the mortgage on the property to become void." *In re Apaydin,* 201 B.R. 716, 723 (Bankr.E.D.Pa.1996). The TILA "gives the courts the power to regulate the manner in which a consumer may exercise the right of rescission." *Id.* Wepsic's receipt of the benefits of rescission therefore will be conditioned on her tender of her duty of repayment under the statute. As one court noted:

> Were the court to find that the security interest is void, the following result would occur: the defendant would have a totally unsecured claim, the plaintiff would retain [her] residence, have an unencumbered homestead right and could pay the creditor under the chapter 13 plan only a fraction of the creditor's remaining claim. This result is after the plaintiffs' finance charges have been credited to them to reduce the principal amount of the loan, statutory penalties have been awarded and attorney fees have been assessed. In short, the debtor/plaintiff would receive all of the benefits accruing from a TILA violation and be relieved of the obligation to pay the remaining principal then due.

*Lynch,* 170 B.R. at 30.

To find otherwise would put payment of Josephson's claim in jeopardy. If Josephson's security interest is voided, Wepsic could easily default under her chapter 13 case and allow the case to be dismissed. Once free from the jurisdiction of the bankruptcy court, Wepsic could sell her home, pocket approximately $93,000 additional equity which is the amount of Josephson's secured claim, and leave Josephson to seek her collection remedies outside of this Court. This result is clearly inequitable given that Wepsic has considerable equity in her home and no other unsecured creditors. On the other hand, if Josephson's lien remains, even if Wepsic's residence is sold, the monies will be turned over to the chapter 13 trustee who will pay Josephson's claim. Alternatively, if Wepsic defaults and her case is dismissed, Josephson will still be protected by retaining her lien on the residence.

In sum, the Court finds that Josephson's claim, subject to any offsets set forth in § 1635(b), shall remain secured by Wepsic's residence until such time Wepsic has tendered her performance as required under 15 U.S.C. § 1635(b).

### D. *Damages.*

■ Wepsic requests statutory damages amounting to twice the finance charge in connection with this transaction, but not less than $200 nor more than $2,000 as to the original violations. 15 U.S.C. § 1640 entitled "Civil liability" provides in relevant part:

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, ... with respect to any person is liable to such person in an amount equal to the sum of—
>
> . . . .
>
> (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, ... or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2000....

Subsection (e) provides that any action under this section may be brought ... within one year from the date of the occurrence of the violation. In this case, Wepsic has alleged (1) understatement of the finance charge; (2) inaccurate disclosure of the APR; (3) understatement of the number of payments; and (4) faulty Notice of Right of Rescission. As to all of these claims, the one-year statute of

limitations runs from the date on which the parties consummated the loan. *In re Woolaghan*, 140 B.R. 377, 382 (Bankr.W.D.Pa.1992) (citations omitted). "Nondisclosure has been held not to be a continuing violation for the purposes of the statute of limitations." *Id.* In this transaction, the one-year would begin to run from November 1, 1996. Wepsic should have brought these damages claims by November 1, 1997. The statute of limitations therefore bars these damages claims. *See also In re Craig*, 7 B.R. 864 (Bankr. E.D.Tenn.1980).

E. *Attorney Fees.*

■ 15 U.S.C. § 1640(a)(3) provides that in a case of a successful action to enforce a right of rescission, "the costs of the action, together with a reasonable attorney's fee as determined by the court." Wepsic has provided no information upon which this Court can determine whether the costs or attorney fees associated with this action are reasonable. Therefore, the Court makes no ruling with respect to Wepsic's request at this time.

F. *Reformation.*

Josephson seeks to have the agreement between her and Wepsic reformed pursuant to Cal.Civ.C. § 3399 which provides in relevant part:

> When, through fraud or mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of the party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

Josephson contends this principle is applicable to note and deed of trust obligations. *First American Title Ins. & Trust Co. v. Cook*, 12 Cal.App.3d 592, 90 Cal.Rptr. 645 (1970) (court reformed usurious provision in note obligation to bring that obligation in conformance with the intentions of the parties). Josephson wants this Court to reform the loan documents, including, but not limited to the promissory note and trust deed between the parties and to eliminate any irregularities not intended by the parties which would have the effect of defeating the mutual intent of the parties at the time of contracting. Wepsic has attacked the default interest rate and the prepayment penalty portions of the promissory note. Josephson has conceded though that she is not trying to enforce these provisions. Therefore, the Court finds its unnecessary to reform the promissory note. In addition, it is questionable whether reformation, a principle under California state law, could be allowed in cases where there is TILA violation and the party is seeking rescission. Josephson points to no authority in this regard. In fact, the rescission remedy under the TILA appears to preempt reformation principles that exist under state law. 15 U.S.C. § 1610(d).

## CONCLUSION

A material issue of fact exists with respect to the correct finance charge. There is no material issue of fact with respect to the APR or that Josephson's disclosure of the same did not amount to a violation of the TILA.

The Court finds that there is no issue of material fact that Josephson failed to accurately disclose the number of payments and the total of the payments. Such inaccurate disclosures violate the TILA. The Court also finds that the Notice of Right of Rescission supplied by Josephson to Wepsic was ineffective in that it was provided to Wepsic six days prior to the consummation of the loan and failed to set forth the correct date by which she could rescind. Based on these violations, Wepsic is entitled to rescind the transaction between her and Josephson.

However, the Court conditions Wepsic's right to rescind. Wepsic may not receive any of the benefits of rescission until she returns any monies, subject to any offsets authorized by the TILA, advanced to her by Josephson as required under 15 U.S.C. § 1635. Until such time, Josephson's lien remains on Wepsic's residence and her claim remains a secured claim.

The Court also finds that Wepsic is not entitled to statutory damages because the one year statute of limitations has run. Wepsic may be entitled to reasonable attor-

ney fees and costs, but Wepsic has failed to provide any evidence to the Court in this regard.

Finally, the Court finds that Josephson is not entitled to reformation.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Wepsic is directed to file with this Court an order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.