Mark D. ENGLAND and Pamela
D. England, Plaintiffs,

v.

MG INVESTMENTS, INC.,
et al., Defendants.

No. CIV. A. 2:98–1192.

United States District Court,
S.D. West Virginia,
Charleston Division.

April 18, 2000.

719

Daniel F. Hedges, Charleston, WV, for Plaintiff.

Dana F. Eddy, Charles D. Dunbar, Jackson & Kelly, Charleston, WV, for MG Investments.

R. Terrance Rodgers, Nicholas P. Mooney II, Allen, Guthrie & McHugh, Charleston, WV, Charlotte E. Thomas, Jay Dubow, Joel Sweet, Wolf, Block, Schorr & Soles–Cohen LLP, Philadelphia, PA, for Advanta.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Defendants Advanta Mortgage Corporation (Advanta) and Bankers Trust (together "Movants"') motions for partial summary judgment on Counts II (fraud) and IV (TILA[1] violations). Also pending is Plaintiffs' motion for partial summary judgment on Movants' holder-in-due-course status. The motions have been fully briefed and are ripe for disposition. For reasons that follow, the motions are **DENIED.**

---

1. Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* (1998).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant MG Investments, Inc., d/b/a PMC Mortgage (MG/PMC), repeatedly solicited Plaintiffs Mark and Pamela England by telephone for a home equity loan. After several contacts, the Englands applied for a thirty-year variable rate loan at an initial interest rate of 11.9% to be secured by their home. (Advanta Mem. in Supp. of Mot. for Summ. J. (Advanta Mem.), Ex. 3.) MG/PMC agent Pat Dye informed the Englands if they entered into the loan and made timely payments for one year, the annual percentage rate (APR) would drop to a fixed rate of eight percent. At the loan closing on March 17, 1997, the Englands noticed the loan documents did not mention this eight percent fixed APR after one year. The settlement agent telephoned Dye who claimed the document containing the assurance had been mailed to the Englands' home, but faxed a document ostensibly assuring this term to the closing agent's office. That document, dated March 13, 1997, said:

> This letter is to confirm that after 12 months of payments on time on your mortgage and all other creditors you will qualify for a fixed rate of 8%.
>
> Please keep in mind that all creditors must be paid on time and no judgments.
>
> P.A. Dye, PMC Mortgage

(Second Am. Compl., Ex. A.)

Upon receipt of this document, Plaintiffs signed a note for a variable rate loan, principal of $72,260.00 at an initial APR of 11.99%.[2] (Second Am. Compl., Ex. 2.) The TILA disclosure statement presented at the closing, however, showed the Amount Financed as $70,335.00 at an APR of 13.88%. The TILA-disclosed finance charge is $69,332.72. The disclosure statement also provided a payment schedule: twenty-four monthly payments at $742.72, six monthly payments at $853.29, fifty-three monthly payments at $860.83, and one final or balloon payment of $71,098 on 03/21/04.[3] Of the loan proceeds, $6,049.24 was distributed to the Englands immediately. (Pls.' Mem. in Opp'n at 7.)

Among numerous documents provided at the closing, the Englands also received a notice that servicing of their mortgage loan would be "assigned, sold, or transferred" from MG Investments Inc. to (Blank), effective March 21, 1997. (Advanta Mem., Ex. 5.) On March 21, 1997, in fact, MG/PMC assigned the note and deed of trust to Defendant Bankers Trust Company of California. (Pls.' Mem. in Opp'n, Ex. 4.)

Having made monthly payments of $742.72 for one year, the Englands returned to Dye requesting the eight percent fixed APR. Plaintiffs allege Dye made excuses and delayed for months, but the terms of the loan agreement were not altered as he represented they would be.[4] On November 4, 1998 the Englands notified both MG/PMC and Advanta they were canceling the loan transaction and directed all correspondence on the dispute to their counsel. Defendants did not respond to the rescission notice, but thereafter made numerous attempts to collect loan payments directly from the Englands. The

---

**2.** The note provided for an interest rate of 11.9%, which could change on March 21, 1999 and every six months thereafter, based on adding eight and one half percentage points (8.5%) to the Index. The "Index" was defined as the average of interbank offered rates for six-month United States dollar-denominated deposits in the London Market. Further, the note stated the interest rate would never be more than 17.990% nor less than 11.99%.

**3.** Thus, after making increasing payments for seven years, the Englands would owe more than they borrowed, that amount due in one lump sum.

**4.** Pat Dye first told Plaintiffs he did not have the payoff figure from Advanta, but later responded the Englands had problems with payments to a credit card company and a medical provider. Plaintiffs called Advanta directly and obtained the payoff amount. They had no credit problems.

Englands made no further payments on the loan obligation.

In March 1999 Plaintiffs filed this civil action alleging illegal and unconscionable balloon payments, fraud, unconscionable agreement, violations of the TILA, and unlawful debt collection practices. Defendants Advanta and Bankers Trust moved for partial summary judgment, claiming neither entity committed any fraud nor TILA violations. Plaintiffs moved for partial summary judgment on holder-in-due-course status for assignees of a variable rate note.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

Rule 56(c) requires that the district court enter judgment against a party who, 'after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however-er, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court

explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]" *Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Serv. Corp.*, 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn*, 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.* 57 F.3d 1317, 1323 (4th Cir.1995). It is through this analytical prism the Court evaluates the parties' motions.

### B.  Count II:  Fraud

Movants first argue that no fraud was committed because Pat Dye's letter confirming an eight percent fixed rate APR after one year was a mere expression of intention, which cannot be a basis for fraud. Second, while Plaintiffs' allegations run against MG/PMC for fraud, Advanta and/or Bankers Trust argue they are assignees only of the loan and, even if fraud was committed, Plaintiffs cannot show Advanta was a participant in it.

#### 1. Expression of intention may be basis of fraud

■■■ Proof of fraud under West Virginia law requires clear and convincing proof:

(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in re-

lying on it; and (3) that he was damaged because he relied on it.

*Cordial v. Ernst & Young*, 199 W.Va. 119, 130, 483 S.E.2d 248, 259 (1996) (citations omitted). Although fraud "cannot be based on statements which are promissory in nature or which constitute expressions of intention," there is an exception where "the non-existence of the intention to fulfill the promise at the time it was made is shown." *Croston v. Emax Oil Co.*, 195 W.Va. 86, 90, 464 S.E.2d 728, 732 (1995). Pat Dye's apparent unwillingness to provide Plaintiffs a written promise of eight percent interest after one year; the addition of contingency terms about obligations to other creditors in the written promise once produced; and, most important, the failure to incorporate the promise into the official loan documents, all raise questions of material fact about MG/PMC's intentions to fulfill the promise at the time it was made. Under these circumstances, such an expression of intention may be offered as evidence of fraud.

### 2. MG/PMC may be Movants' Agent

■ Advanta and Bankers Trust next argue that even if a fraud was perpetrated, it arose from the acts and representations of MG/PMC alone. Movants describe the relationship between Advanta and MG/PMC as an arms-length business relationship. Under the Defendants' contract with each other (and not with the Plaintiffs), MG/PMC agreed to use its best efforts to sell to Advanta one million dollars worth of loans a month. To qualify, those loans had to meet the terms of the sixteen (16) page "Master Loan Purchase Agreement." [5] The contract between the two as Buyer and Seller of "qualifying" loans [6] explicitly provided that "neither the Seller nor the Buyer is the agent of the other."

■■■ Agency, however, is a legal concept depending on the existence of required factual elements. Restatement (Second) of Agency § 1 cmt. b (1958). The agency relation is "created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act." *Id.* at cmt 1. The legal relationship of agency might exist between MG/PMC and Advanta and Bankers Trust toward third parties, such as borrowers, despite contractual protestations to the contrary among Defendants.

Advanta argues the evidence shows it did not participate in the Englands' loan: 1) the Englands signed a blank notice of assignment of servicing, showing no one knew to whom the loan would be assigned, and 2) Advanta did not purchase the loan until April 25, 1997. (Defs.' Reply to Pls.' Mem. in Opp'n at 5–6.) At signing, the assignment notice given Plaintiffs was blank as to the assignee, but the notice was post-dated March 21, 1997. On March 21, 1997 the Englands' note and deed of trust were, in fact, assigned to Bankers Trust, Trustee for Advanta.[7] A reasonable

---

5. The Master Loan Purchase Agreement contains 28 detailed requirements for the loans originated by Sellers such as MG/PMC, including (1) information required from a borrower pursuant to Defendant's "Master Loan Schedule" (Advanta Mem., Ex. 6 at 8); (2) all documentation on a transaction pursuant to Advanta's "Documentation Requirements" (*id.*); (3) purchase of a flood certification from a specific company (*id.* at 10); (4) interest calculated by a specific method (*id.*); (5) loans to follow detailed underwriting guidelines and contain certain features, defined as "required underwriting and origination guidelines" (*id.* at 1); (6) appraisal policies; (7) a tax service contract with a specific company by name; and (8) 21 other detailed

requirements. The Seller is required to deliver a power of attorney to Advanta. (*Id.* at B–1).

6. The Buyer of the qualifying loans is Advanta Mortgage Conduit Services. Advanta Mortgage Corporation is identified in the agreement as "Master Servicer." Advanta Mortgage Conduit Services and Advanta Mortgage Corporation have the same address: 16875 West Bernardo Drive, San Diego, California 92127 (*See* Advanta Mem., Ex. 6, ADV–ENG 0408, 0414.)

7. "Advanta Mortgage has power of attorney as attorney in fact for Bankers Trust relative to servicing the subject loan." (Advanta

jury could infer that MG/PMC post-dated the loan servicing to Advanta to transfer on March 21 because it planned to assign the note and deed of trust to Bankers Trust immediately after the March 17 loan closing. By this method, the identity of Advanta and/or Bankers Trust might be withheld from the Englands deliberately.

Of particular relevance to this issue, the Master Commitment between MG/PMC and Advanta requires, "The Seller and its attorneys and accountants will not disclose to third parties, without the Buyer's prior consent, the terms of this Master Commitment, or the other related Conduit Agreements, except as required by law." (Advanta Mem., Ex. 6, Master Commitment at 3.) Additionally, "Each such sale will be closed on a servicing released basis." (*Id.* at 1.) These provisions together may explain why the Englands were presented a notice that the servicing of their mortgage loan was being assigned from MG/PMC to (Blank), effective March 21, 1997, thus protecting Advanta and Bankers Trust's identity. These documents and events reasonably suggest that, rather than simply making home equity loans on its own and then pooling them for sale to Advanta, MG/PMC was actually making the loans on behalf of Advanta, that is, as Advanta's agent, and immediately assigning them to Advanta's trustee, although the actual pooling/sale transaction took place when an appropriate number of loans had been made.

On the record before the Court, there are issues of material fact concerning the possible agency relation between MG/PMC and Movants. Accordingly, the Court **DENIES** Advanta and Bankers Trust's motion for partial summary judgment on Plaintiffs' fraud claim.

### 3. Assignees take subject to all claims and defenses

Plaintiffs point out, "normally an assignee takes subject to all the defenses and all the equities which could have been set up against the instrument in the hands of the assignor at the time of the assignment." *Lightner v. Lightner,* 146 W.Va. 1024, 1034, 124 S.E.2d 355, 362 (1962). Where, as here alleged, the fraud was in the inducement, the note Movants hold may be unenforceable.

■ Holder in due course (HDC) status insulates an assignee from the dire consequences of this rule, of course.[8] *See* W. Va.Code § 46–3–302. Both Advanta and Bankers Trust claim holder in due course status, (Advanta Answer and Countercl., Defense 13; Answer of Bankers Trust, Defense 13) although they do not rely on it in any briefing presented to date.

■ The Court thus merely notes that numerous questions of fact about Movants'

---

Counterclaim ¶ 5; *see also* Yilmaz Dep., Advanta Mem., Ex. 1 at 24 ("To my knowledge, Bankers' Trust of California is the trustee for Advanta Mortgage Corporation.").)

8. An assignee attains such protected status only by strict compliance with Uniform Commercial Code (UCC) § 3–302, W. Va.Code § 46–3–302. Plaintiffs move for partial summary judgment, arguing Movants cannot be HDCs on a nonnegotiable note, and a variable interest note is nonnegotiable. A negotiable note must contain an unconditional promise to pay a sum certain, a "fixed amount of money." UCC § 3–104(a). Under the original version of UCC Article 3, a note payable at a rate of interest not determinable from the face of the note was not for a sum certain. *See e.g., A. Alport & Son, Inc. v. Hotel Evans,*

*Inc.,* 65 Misc.2d 374, 317 N.Y.S.2d 937 (1970). In 1990 the UCC § 3–112 was rewritten, which amendment was adopted in West Virginia in 1993. The Code and statute now provide:

> Interest may be stated in an instrument as a fixed or variable amount of money or it may be expressed as a fixed or variable rate or rates. The amount or rate of interest may be stated or described in the instrument in any manner and may require reference to information not contained in the instrument.

UCC § 3–112(b); W. Va.Code § 46–3–112(b). Accordingly, an assignee may be a holder in due course of a variable rate note. Plaintiffs' motion for partial summary judgment on this issue is **DENIED.**

entitlement to HDC status have been raised and cannot be resolved at this juncture. For example, the note and deed of trust were assigned to Bankers Trust, not Advanta.[9] On the developed record, Advanta is not a holder and could not, therefore, be an HDC. Further the actual relations among MG/PMC, Advanta and Bankers Trust remain obscure, at best. To attain HDC status, the holder must take the note *in good faith and without notice of any claim.* W. Va.Code § 46–3–302. "[T]he more the holder knows about the underlying transaction, ... or becomes involved in it, the less he fits the role of a good faith purchaser for value[.]" *One Valley Bank of Oak Hill v. Bolen,* 188 W.Va. 687, 690, 425 S.E.2d 829, 832 (1992) (citation omitted). The questions raised earlier concerning assignment of Englands' note and deed of trust preclude any determination on this record that Bankers Trust may enjoy HDC protections.

### C. Count IV: Truth in Lending Act Violations

Movants argue 1) Plaintiffs have demonstrated no TILA violations because an overstated APR and finance charge do not violate the TILA; 2) Plaintiffs failed to rescind within three days so their attempt to rescind twenty months later is time-barred; and 3) Plaintiffs cannot recover monetary penalties or attorney fees from an assignee.

#### 1. TILA violations: accurate disclosure

■ To inform consumers of the true cost of credit, TILA and its implementing Regulation Z require lenders to disclose to consumers certain material terms clearly and conspicuously in writing. *See* 15 U.S.C. § 1638(b)(1) (1998); 12 C.F.R. § 226.17(a)(1) (1999). The required disclosures "shall reflect the terms of the legal obligation between the parties." 12 C.F.R. § 226.17(c). Material inconsistencies

among the loan terms presented in writing to the borrower violate this requirement. As one court stated the rule:

> The cardinal principle of the TILA and its Regulations is making sure that [all the documents in a given transaction and the disclosure statement] are identical, with the disclosure statement being more clearly worded and perhaps shorter, but providing accurate information in order that the consumer can refer to it as a benchmark in his or her hypothetical "shop for credit."

*In re Ralls,* 230 B.R. 508, 516 (Bkrtcy. E.D.Pa.1999) (quoting *In re Martin,* 72 B.R. 126, 127–28 (Bankr.E.D.Pa.1987). The conflicting documents provided to the Englands included 1) an adjustable rate note, principal $72,260, APR 11.990% and 2) a TILA disclosure statement, principal $70,335, APR 13.88%, finance charge $69,332.72.

■ Defendants argue that, under a 1995 TILA amendment, for credit transactions secured by a dwelling, APR and finance charge disclosures are treated as "accurate" if the amount disclosed is greater than the amount required to be disclosed. *See* 15 U.S.C. § 1605(f); 12 C.F.R. § 226.18(d)(1)(2). The overstated APR and finance charge, they argue, thus provide no basis for a TILA violation. In this case, however, the disclosure statement overstates the APR, *understates* the amount financed and, presumably, calculates the finance charge on these two inaccurate figures. Or perhaps, the wrong APR results from applying the overstated finance charge to the understated principal financed. Even relying on the extended notion of "accuracy," neither the finance charge nor the APR, much less the principal amount financed, pass muster as "accurate."

Additionally, the disclosure statement sets forth an extremely clear, but errone-

---

9. In collection letters sent to the Englands, however, the Creditor is identified as Advanta Mortgage Corporation. (Pls.' Mem. in Opp'n, Ex. 8.)

ous payment schedule.[10] Plaintiffs were paying the loan pursuant to that schedule, which provided for interest at 13.88%. It defies semantics and logic to say that this TILA disclosure statement is "accurate" because the finance charge is too high. The amount financed, APR, finance charge and payment schedule were all inaccurate descriptions of the true loan obligations. Consequently, the TILA disclosure statement at issue here was not an accurate representation of the terms of the legal obligation between the parties.[11] The motion for partial summary judgment that no TILA violations occurred, based on an overstated but technically accurate APR, is DENIED.

### 2. TILA rescission not time-barred

TILA provides for a mandatory three-day "cooling off" rescission period immediately following a loan transaction. *See* 15 U.S.C. § 1635(a). Where lenders fail to make material disclosures to borrowers, however, the borrowers may rescind the transaction within three years of the date of consummation of the transaction. *See* 15 U.S.C. § 1635(a), 1635(f). Assignees are subject to the rescission right to the same extent as is the original creditor. *See* 15 U.S.C. § 1641(c). Accordingly, Plaintiffs' right to rescind, triggered by complete and total failure of the material TILA disclosures was not time-barred, but occurred within the statutory three-year period, which ended March 17, 2000. The motion for summary judgment based on a time-barred rescission is DENIED.

### 3. Assignee liability for penalties and attorney fees

Assignees are liable for statutory damages for TILA violations only when the violations are proven to be apparent on the face of the documents assigned. *See* 15 U.S.C. § 1641(a). The patent discrepancies between the note and the TILA disclosure statement discussed above may be sufficient to trigger assignee liability under this provision. The motion for summary judgment on assignee liability for TILA penalties and attorney fees is DENIED.

### III. CONCLUSION

The Court DENIES Advanta and Bankers Trust's motions for summary judgment on Counts II and IV of the Second Amended complaint. Plaintiffs' motion to deny Movants holder-in-due-course status based on assignment of a variable rate note is DENIED.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

---

10. Because this was a variable rate note with future interest rates dependent on future Index values, notice of an accurate payment schedule was not possible.

11. Because the Court relies on the substantial misstatements of the TILA disclosures, it does not reach the issue of whether MG/PMC's promises of an eight percent fixed APR after one year were material conditions of the loan that should have been incorporated in the note and disclosure statements. Questions of fact and credibility of witnesses are involved, making the issue inappropriate for summary judgment.