Victor J. ALICEA, Plaintiff,

v.

**CITIFINANCIAL SERVICES, INC., Defendant.**

No. Civ.A. 02–30007–FHF.

United States District Court, D. Massachusetts.

July 22, 2002.

---

---

Christopher M. Lefebvre, Claude Lefebvre & Christopher M. Lefebvre Law Offices, Pawtucket, RI, for Victor J. Alicea, plaintiff.

Jon M. Anderson, Edwards & Angell, LLP, Boston, MA, Patricia A. Sullivan, Edwards & Angell, LLP, Boston, MA, for Citifinancial Services, Inc., defendant.

*MEMORANDUM AND ORDER*

FREEDMAN, Senior District Judge.

## I. INTRODUCTION

The plaintiff, Victor J. Alicea ("Alicea"), brings this civil action alleging· that the defendant, CitiFinancial Services, Incorporated ("defendant"), made an inadequate disclosure pursuant to a mortgage in violation of the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA"), and its Massachusetts counterpart, the Consumer Credit Cost Disclosure Act, Mass.Gen.Laws ch. 140D ("CCCDA"). The defendant now moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons presented below, the defendant's motion will be granted.

## II. STANDARD OF REVIEW

When presented with a motion to dismiss, the district court must take as true "the well-pleaded facts as·they appear·in the complaint, extending the plaintiff every reasonable inference in his favor." *Medina–Claudio v. Rodriguez–Mateo,* 292 F.3d 31, 33 (1st Cir.2002) (quotation omitted). "[B]ald assertions, unsupportable ·conclusions, periphrastic circumlocution, and the like, on the other hand, can safely be ignored." *See Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). A complaint should not be dismissed under Federal Rule of Civil Procedure 12(b)(6), however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Medina–Claudio,·* 292 F.3d at 33 (quotation omitted).

## III. BACKGROUND

Alicea owns and resides in the property that is the subject of this complaint. On January 18, 2001, Alicea consummated a mortgage loan with the defendant, secured by his home, for $54,810,18, payable over thirty years. The annual percentage rate ("APR") of the loan is 11.76%. The loan obtained by Alicea was a new lending product offered by the defendant called a Track Reduction Adjustable Mortgage ("TRAM"), a sub-prime mortgage program offering lower rates to mortgagors once they establish a·history of on-time payments. *See, e.g., Fluehmann v. Assocs. Fin. Servs.,* 2002 WL 500564, No. Civ.A.

01–40076–NMG, at *1 (D.Mass. Mar. 29, 2002). "Although TRAMs are designed to buoy the financial standing of the less credit worthy, they are, as is the case with many loan instruments, rife with complexities that may make them incomprehensible to the average consumer." *Id.* at *2.

Under the structure of the TRAM at issue in this case, Alicea executed a Rate Reduction Rider ("Rider") at the closing. The Rider provided that Alicea could earn a .5% reduction in the APR by making twelve consecutive monthly payments in a row without becoming, during that time, thirty or more days contractually delinquent. The Rider also provided that Alicea could earn a second reduction of .75% by making another twelve consecutive on-time payments. A third and fourth APR reduction of 1.0% could also be earned by repeating the same pattern of consistent payments. Over the life of the loan, therefore, Alicea was eligible for a total reduction of 3.25% by complying with a pattern of timely payments. However, the Rider also provided that the interest rate reductions were limited by a minimum rate requirement of the highest prime rate plus one percentage point on the effective date of the reduction.

## IV. DISCUSSION

On January 14, 2002, Alicea exercised his right to rescind the mortgage loans. Two days later, he filed this claim on behalf of a class, seeking damages and asking the Court for a declaration that the recision was proper. The gravamen of his claim is that the defendant's TILA disclosure reported his APR as 11.76%, but omitted any mention of the potential APR reductions, as set forth in the Rider. This omission, contends Alicea, constitutes an erroneous overstatement of his APR in the TILA disclosure.

The defendant now moves to dismiss the plaintiff's claim, arguing that the failure to disclose the potential APR reductions set forth in the Rider does not constitute an inaccurate disclosure under TILA. Even if this omission is a technical violation of TILA, the defendant contends that the safe harbor provision of 15 U.S.C. § 1605(f)(1)(B) provides immunity from liability for any overstatement of the APR, such as the error alleged by the plaintiff in this case. Because the Court accepts the defendant's second argument, it will begin there.

The stated purpose of the TILA is to "promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms."[1] *Begala v. PNC Bank, Ohio, Nat'l Ass'n,* 163 F.3d 948, 950 (6th Cir.1998), *cert. denied,* 528 U.S. 868, 120 S.Ct. 166, 145 L.Ed.2d 141 (1999); *see* 15 U.S.C. § 1601. The TILA "is a disclosure statute; it does not regulate substantively consumer credit but rather requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction." *Szumny v. Am. Gen. Fin., Inc.,* 246 F.3d 1065, 1070 (7th Cir.2001). "Accordingly, the Act requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998); *see* 15 U.S.C. § 1638(a)(3)–(6). The regulations interpreting TILA, moreover, provide that disclosures must "reflect the terms of the

---

1. The Massachusetts CCCDA was closely modeled on the TILA. *Mayo v. Key Fin. Servs.,* 424 Mass. 862, 678 N.E.2d 1311, 1313 (1997); *Fluehmann,* 2002 WL 500564, at *3 n. 2. Accordingly, the Court will rely on TILA, and the federal cases, to interpret the Massachusetts statute. *Fluehmann,* 2002 WL 500564, at *3 n. 2.

legal obligation between the parties."[2] 12 C.F.R. § 226.17(c)(1).

■ In 1995, the TILA was amended "to clarify the intent of such Act and to reduce burdensome regulatory requirements on creditors." *O'Brien v. J.I. Kislak Mortgage Corp.*, 934 F.Supp. 1348, 1359 (S.D.Fla.1996). The TILA Amendments added 15 U.S.C. § 1605(f)(1)(B), which allows new tolerances in closed-end credit transactions secured by real property or a dwelling, such as in this case. "The new tolerances give creditors a larger margin for error in disclosing the finance charge for [such] transactions." *In re Wepsic*, 231 B.R. 768, 773 (Bkrtcy. S.D.Cal.1998). Section 1605(f)(1)(B) provides:

> (f) Tolerances for accuracy. In connection with credit transactions not under an open end credit plan that are secured by real property or a dwelling, the disclosure of the finance charge and other disclosures affected by the finance charge—
>
> (1) shall be treated as being accurate for purposes of this title if the amount disclosed as the finance charge—
>
> (B) is greater than the amount required to be disclosed under this title.

15 U.S.C. § 1605(f)(1)(B). Under this "safe harbor" provision, "the finance charge and all disclosures affected by the finance charge are deemed accurate *if the disclosure error produces a finance charge which exceeds the actual finance charge.*" *VanDenBroeck v. Commonpoint Mort.*

**2.** TILA expressly authorizes the Federal Reserve Board to "prescribe regulations to carry out the purposes of" the Act. 15 U.S.C. § 1604. The Board promulgated "Regulation Z" for this purpose. 12 C.F.R. pt. 226. The disclosure requirements of TILA are further elucidated by the Official Staff Interpretations of Regulation Z. 12 C.F.R. pt. 226 Supp. I. The federal courts afford these interpretations

*Co.*; 22 F.Supp.2d 677, 687–88 (W.D.Mich. 1998) (emphasis added). *See also Mayo v. Key Fin. Servs.*, 424 Mass. 862, 678 N.E.2d 1311, 1313 (1997) (safe harbor provision in Massachusetts statute "treats an overstatement of the finance charge as per se immaterial.")

The dispositive issue before the Court is whether the safe harbor provision immunizes a creditor from liability where, as here, its TILA disclosure erroneously overstates the APR.[3] To properly resolve this question, the Court must determine whether the APR is a "finance charge" or one of the "affected disclosures" that fall within the safe harbor provision of section 1605(f)(1)(B). Although the cases are largely silent on this precise issue, the Federal Reserve Board's regulations and interpretive guidelines clearly indicate that an overstated APR falls within the safe harbor provision, and therefore provides no basis for a TILA violation. For instance, the Board's revisions to Regulation Z incorporating the 1995 Amendments explain the application of section 1605(f)(1)(B) as follows:

> (1) Mortgage loans. In a transaction secured by real property or a dwelling, the disclosed finance charge and other disclosures affected by the disclosed finance charge (*including the amount financed and the annual percentage rate*) shall be treated as accurate if the amount disclosed as the finance charge:
>
> (ii) Is greater than the amount required to be disclosed.

"great weight in interpreting the TILA and the regulations under it." *Cowen v. Bank United of Texas*, 70 F.3d 937, 943 (7th Cir. 1995).

**3.** For the purposes of this analysis, the Court will assume, without deciding, that the defendant erroneously disclosed an inflated interest rate to the plaintiff.

12 C.F.R. § 226.18(d)(1) (emphasis added). The interpretive guidelines amplify this conclusion, stating:

> [T]he amendments create a tolerance for the finance charge disclosed for mortgage loans as well as 'any disclosure affected by the finance charge.' Consumer groups argued that the Congress intended the new tolerances to apply only to numerical disclosures other than the APR ... for which there is currently no regulatory or statutory guidance. *The Board, however, believes that the APR is one of the 'affected disclosures.'*

Rules & Regulations, Federal Reserve System, 61 Fed.Reg. 49,237, 49,242 (1996) (emphasis added). Based on the clear pronouncements of the Federal Reserve, the Court concludes that any overstatement of the APR by the defendant must be "treated . as being accurate...." 15 U.S.C. § 1605(f)(1)(B); *see In re Wepsic*, 231 B.R. at 773. (stating that new tolerance of section 1605(f)(1)(B) "applies to ... any disclosure affected by the finance charge, such as the APR.") Liability, therefore, cannot arise based on the defendant's erroneous TILA disclosure.

The plaintiff counters that the safe harbor provision does not encompass an overstated APR, but is designed solely to address situations in which creditors mistakenly disclose finance charges as part of the amount financed, as occurred in *Rodash v. AIB Mortgage Co.*, 16 F.3d 1142 (11th Cir.1994). *See VanDenBroeck*, 22 F.Supp.2d at 688 n. 7; Rules & Regulations, Federal Reserve System, 61 F.R. at 49,238 (stating that 1995 TILA Amendments' designed to address concerns of mortgage lenders arising from *Rodash* decision). The plaintiff's contention, however persuasive, is simply not enough to overcome the contrary language of the Board's regulations and interpretive guidelines.

Moreover, the case of *England v. MG Investments, Inc.*, 93 F.Supp.2d 718 (S.D.W.Va.2000) is readily distinguishable from the facts of this case. There, the plaintiffs signed a note for a variable rate loan, principal of $72,260 with an initial APR of 11.99%. *England*, 93 F.Supp.2d at 720. The TILA disclosure statement presented at the closing, however, reflected the principal as $70,335 at an APR of 13.88%. *Id.* The court noted that "the disclosure statement overstates the APR, *understates* the amount financed and, presumably, calculates the finance charge on these two inaccurate figures." *Id.* at 724 (emphasis in original). Ultimately, the court held that the safe harbor provision of section 1605(f)(1)(B) did not immunize the creditor from liability. *Id.* It reasoned that because the disclosure understated the financed amount, it was not protected by the safe harbor provision, which by its own terms encompasses only *overstatements* of finance charges. *Id.* Here, by contrast, the only error alleged is an overstatement of the APR, and there are no understatements alleged at all. Unlike the errors alleged in *England*, therefore, the Court concludes that the overstatement of the APR alleged in this case is clearly governed by the safe harbor provision. *See* 15 U.S.C. § 1605(f)(1)(B).

## V. CONCLUSION

Accordingly, the defendant's motion to dismiss is GRANTED.

It is So Ordered.