# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-3958

HARRY CARMICHAEL AND LOUISE CARMICHAEL,

*Plaintiffs-Appellants,*

v.

THE PAYMENT CENTER, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 9392—**Milton I. Shadur**, *Judge.*

ARGUED MAY 28, 2003—DECIDED JULY 17, 2003

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges.*

MANION, *Circuit Judge.* Harry and Louise Carmichael sued The Payment Center, Incorporated (PCI), alleging that PCI violated the Truth in Lending Act (TILA or the Act), 15 U.S.C. § 1601, *et seq.*, by failing to make adequate disclosures regarding their loan, and by failing to allow them the extended recision period of three years required when a creditor fails to make a material disclosure. The district court granted summary judgment, holding that PCI's disclosures were adequate under the Act and that the extended recision period was therefore unavailable to the Carmichaels. The Carmichaels appeal. Because PCI's disclosures satisfied the Act, we affirm.

I.

In March 2001, PCI lent the Carmichaels $69,000 for home remodeling, which they secured through a mortgage on their house. The promissory note called for a series of 12 monthly payments of $709.74, followed by a final balloon payment[1] of all remaining principal and interest in the 13th month, although the Carmichaels had the option of prepayment. In an effort to comply with the Act, PCI submitted a TILA statement to the Carmichaels. The statement was accurate except for two glaring errors: it greatly overstated the finance charge as $188,716.76, and it likewise overstated that the Carmichaels' total of payments would be $257,716.76. Both amounts due under the loan contract were only a fraction of the numbers listed. Despite the obvious mistakes in the TILA document, the Carmichaels made several of the $709.74 monthly payments to PCI. In October 2001, they then made several attempts to rescind the loan, each of which PCI rebuffed. In June 2002, after this litigation started, the Carmichaels paid the correct balance due on the promissory note.

The Carmichaels brought suit against PCI in December 2001, alleging, in relevant part,[2] that PCI violated: (1) 15 U.S.C. § 1638(a)(6), by failing to disclose the amount of the 13th payment; (2) 15 U.S.C. § 1638(a)(4), by failing to disclose accurately the annual percentage rate (APR);

---

[1] "A balloon payment results if paying the minimum periodic payments does not fully amortize the outstanding balance by a specified date or time, and the consumer must repay the entire outstanding balance at such time." 12 C.F.R. § 226.5b(d)(5)(1) n.10b (2003).

[2] The district court dismissed all other claims on the Carmichaels' motion.

and (3) 15 U.S.C. § 1635(f), by refusing to allow the Carmichaels to rescind the loan during the extended recision period of three years applicable when the creditor makes a material non-disclosure. On PCI's motion for summary judgment, the district court dismissed all three claims. The Carmichaels appeal the dismissal of the three claims.

## II.

This court reviews the district court's grant of summary judgment *de novo*, construing all facts in favor of the non-moving party. *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "[s]ummary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Rogers*, 320 F.3d at 752.

The Act's main purpose is to allow consumers to compare credit rates so that they may make an informed use of credit. 15 U.S.C. § 1601(a) (2000); *Brown v. Marquette S. & L. Ass'n*, 686 F.2d 608, 612 (7th Cir. 1982). Toward that end, § 1638(a)(6) requires lenders to disclose accurately the "number, amount, and due dates or period of payments scheduled to repay the total of payments." Regulation Z, which implements TILA, similarly provides that "the creditor shall disclose . . . [t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g).

The first issue on appeal is whether PCI adhered to § 1638(a)(6)'s amount requirement regarding the 13th payment. It is undisputed that PCI's TILA document describes the 13th payment's amount as encompassing "the balance of unpaid principal and interest to be paid in full"; there is no dollar figure for the 13th payment. Therefore, we must first decide whether, as the Carmichaels maintain, only a dollar figure can satisfy § 1638(a)(6)'s amount requirement. This is an issue of first impression in this jurisdiction and, as far as we can discern, a question that none of our sister circuits has answered.

"When interpreting the meaning of a statute, we look first to the text; the text is the law, and it is the text to which we must adhere." *United States ex rel. Feingold v. AdminAstar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003). The Act's definition section does not define the term "amount." *See* 15 U.S.C. § 1602. Without a statutory definition, we construe the term "in accordance with its ordinary or natural meaning," a meaning which may be supplied by a dictionary. *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). Dictionaries, however, are inconclusive in this case. Some definitions of "amount" treat the word as being synonymous with a precise number, which would favor the Carmichaels' view that the amount requirement is satisfied only where a dollar figure is provided. *See, e.g.*, Webster's Ninth New Collegiate Dictionary 80 (1987) ("the total number or quantity"); The Compact Oxford English Dictionary 46 (1987) ("[t]he sum of the principal and interest due upon a loan"). Other definitions of "amount" are broader, which would support PCI's position that "amount" does not necessarily equate to "dollar figure." *See, e.g., id.* ("[t]he full value, effect, significance, or import"); Webster's Third New International Dictionary 72 (1981) ("the whole or final effect, significance, or import").

Regulation Z, however, shows that the broader concept of amount applies within the context of TILA. It provides that, "[i]n a transaction in which a series of payments varies because a finance charge is applied to the unpaid principal balance, the creditor *may* comply with this paragraph by disclosing . . . (i) [t]he *dollar amounts* of the largest and smallest payments in the series." 12 C.F.R. § 226.18(g)(2)(i) (emphasis added). This provision illustrates that "amount" does not necessarily equate to "dollar figure" within the scheme of TILA and its implementing regulations. First, the provision's use of the word "may" indicates that providing a dollar figure as to the largest and smallest payments is a permissive, instead of mandatory, means of satisfying § 1638(a)(6)'s amount requirement, *see Christensen v. Harris County*, 529 U.S. 576, 588 (2000), which leads unavoidably to the conclusion that there must be other ways to satisfy the requirement. The provision also implies the possibility that the dollar figures of the other payments in the series need not be given, which leads to the same conclusion.

A statute and its implementing regulations should be read as a whole and, where possible, afforded a harmonious interpretation. *See Tom Lange Co., Inc. v. A. Gagliano, Inc.*, 61 F.3d 1305, 1310 (7th Cir. 1995); *Powell v. Heckler*, 789 F.2d 176, 179 (3d Cir. 1986). We are able to apply that standard here. Although the word "amount" as contained in § 1638(a)(6) is susceptible to different definitions, Regulation Z makes clear that there are instances in which a creditor may satisfy the amount requirement without providing a dollar figure. In light of that consideration, it is safe to conclude that the word "amount" in § 1638(a)(6) does not necessarily equate to "dollar figure."

Analogous authority also weighs in favor of this interpretation. In *Clay v. Johnson*, 264 F.3d 744 (7th Cir. 2001), we confronted the question of whether a creditor met

§ 1638(a)(6)'s demand that it provide the "due dates" on which the borrower must make payments. *Id.* at 746. In *Clay*, as here, the consumers borrowed money to finance home improvements. *Id.* at 745. Instead of providing a specific date on which the borrowers had to make the first payment, the lender had written in its TILA disclosure that the borrowers' monthly payments would begin "30 days from completion" of the construction work. *Id.* at 746. The consumers sued, arguing that only an exact date on which the first payment would be due, or an estimate of the due date if a precise calendar date were unavailable, would adhere to § 1638(a)(6)'s "due dates" requirement. *Id.* The district court agreed with the plaintiffs and granted summary judgment on that ground. *Id.* We reversed, holding that, under Regulation Z and its commentary, § 1638(a)(6)'s "due dates" requirement could be met even where the creditor provided no precise due date. *Id.* at 750. It was enough, instead, that the lender had provided the borrowers with the information from which they could derive the first due date for themselves. Although *Clay* concerned a different aspect of § 1638(a)(6) than we inter-pret today, and different parts of Regulation Z and its commentary, it buttresses the proposition that courts are to evaluate § 1638(a)(6)'s strictures functionally, not in formalistic manner.

Reading the Act and its implementing regulations as a whole, and in light of analogous precedent, we hold that providing a dollar figure is not the only means of adher-ing to § 1638(a)(6)'s amount requirement. That leads us, then, to the more fundamental question of whether the disclosure that PCI made regarding the 13th payment, although not in the form of a dollar figure, satisfied § 1638(a)(6).

A creditor's TILA disclosures must meet an objective standard, providing the relevant information in a form

that a "reasonable person" would understand. *Rendler v. Corus Bank, N.A.*, 272 F.3d 992, 999 (7th Cir. 2001). Here, a reasonable person in the Carmichaels' position would have comprehended what "the balance of unpaid principal and interest to be paid in full" meant. The loan was for $69,000 at an APR of 12%. The loan called for 12 monthly payments of a minimum of $709.74 each, which adds to $8,516.88 over the course of a year. Thus, a reasonable consumer who paid the minimum payments[3] for the first twelve months would have known that the first twelve payments would cover mostly interest, and that the 13th payment would be slightly less than the principal loan of $69,000, which is what one would expect to be the case for a construction loan with a balloon payment. *See generally* Marianne Moody Jennings, Real Estate Law 579 (5th ed. 1999). Had he, or someone on his behalf, made the calculations, our reasonable consumer could have learned that the precise number was $68,727.37. In short, this case is an example of how the amount requirement can be satisfied by providing a method that would enable a reasonable consumer to calculate the dollar figure of a final payment where the dollar figure of that final payment depends on the actual payments the consumer had made beforehand.

The Carmichaels disagree, contending that because the reasonable consumer is "left to guess the amount of the 13th payment," he "could easily assume the 13th payment to be $249,199.88, *e.g.*—subtracting 12 monthly payments of $709.74 each ($8,516.88) from the total of payments of

---

[3] Under the loan's terms, the Carmichaels were allowed to make higher payments in any given month. Had they done so, the 13th payment would have been correspondingly reduced or even eliminated.

$257,716.76 ($257,716.76 – $8516.88 = $249,199.88)." We do not subscribe to that point of view. Such an "easy" assumption would be ridiculous where, as here, the original loan was for $69,000.

Aside from that obvious defect, there is another fundamental flaw in the Carmichaels' position. The Carmichaels are essentially saying that PCI violated § 1638(a)(6) because, by grossly overstating the total of payments, PCI insinuated that the 13th payment was far larger than actually was the case. PCI, relying upon 15 U.S.C. § 1605(f)(1)(B), argues that TILA immunizes creditors from liability under the Act where, as here, they overstate a disclosure affected by a finance charge. Section 1605(f)(1)(B), through which Congress amended the Act in 1995, provides as follows:

> In connection with credit transactions not under an open end credit plan that are secured by real property or a dwelling, the disclosure of the finance charge *and other disclosures affected by any finance charge*—
>
> (1) shall be treated as being accurate for purposes of this subchapter if the amount disclosed as the finance charge– . . .
>
> (B) is greater than the amount required to be disclosed under this subchapter . . .

15 U.S.C. § 1605(f)(1)(B) (emphasis added).

Theoretically, the $257,716.76 total-of-payments figure, although patently incorrect, was "affected by any finance charge," because it corresponds to the addition of the $69,000 principal to the inaccurately listed finance charge of $188,716.76. Therefore, the $249,199.88 amount of the 13th payment that, the Carmichaels argue, derives from the total-of-payments number was itself "affected by [the over-

stated] finance charge" and, pursuant to § 1605(f)(1)(B), must be "treated as being accurate." Thus, even after drawing all factual inferences in the Carmichaels' favor, we hold that there is no genuine issue of fact as to the Carmichaels' claim under § 1638(a)(6). The Act protects consumers only when the stated amount is *less* than the amount required to be disclosed.

We turn now to the Carmichaels' second claim: that PCI violated § 1638(a)(4), which requires creditors accurately to disclose the contractual APR. To be accurate, such a disclosure must "reflect the terms of the legal obligation between the parties," which, of course, derive from the loan contract. *Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 767 (7th Cir. 2000) (quoting 12 C.F.R. § 226.17(c)(1)). Here, the loan contract was the parties' promissory note, which required the Carmichaels to pay an APR of 12%. It would therefore seem obvious that the 12% APR listed on the TILA document was accurate and that PCI is not liable under § 1638(a)(4).

The Carmichaels' position, nonetheless, is that the APR should be calculated not from the loan contract, but should be "based on [PCI's] disclosed Finance Charge of $188,716.76, [the] Amount Financed of $69,000, 12 monthly payments of $709.74 each and a 13th installment of the remaining balance," which equates to an APR of "130.7721 percent." Because PCI did not list an APR of 130.7721% on the TILA document, so the argument goes, it violated § 1638(a)(4). This contention is incorrect because it ignores the fundamental point that the terms of the contract dictate the TILA disclosure, not vice versa. *See id.*

In their reply brief, the Carmichaels try a different approach, arguing for the first time that "the APR is impossible to calculate." Because they have waited until this juncture to contend that no calculation of the APR is

possible, that argument is waived. *See, e.g., James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998). Moreover, to the extent that the Carmichaels' argument might be construed to imply that the creditor overstated the APR, the Carmichaels still would lose. The APR is a disclosure affected by the finance charge. *Wepsic v. Josephson (In re Wepsic)*, 231 B.R. 768, 773 (Bankr. S.D. Cal. 1998). Therefore, where the APR is overstated, § 1605(f)(1)(B) immunizes a creditor from liability for that technical inaccuracy. *Alicea v. Citifinancial Servs., Inc.*, 210 F. Supp. 2d 4, 7-8 (D. Mass. 2002); *Wepsic*, 231 B.R. at 772-73. Even where the overstatement is so obviously an error (to everyone except the Carmichaels), they cannot prove that PCI violated § 1638(a)(4).

The Carmichaels' final argument on appeal is that they were entitled to an extended period of recision under § 1635(f). The Act provides that a consumer may rescind, *inter alia*, a consumer credit transaction in which the creditor retains a security interest on the consumer's home. In the typical case, this right extends until the third business day after the later of two dates: the date on which the parties consummate the transaction, or the date on which disclosure and recision forms are delivered to the consumer. 15 U.S.C. § 1635(a). If, however, the creditor fails to deliver the forms, or fails to provide the required information, the right to rescind extends for three years after the transaction's consummation. *Id.* § 1635(f); 12 C.F.R. § 226.23(a)(3); *Smith v. Highland Bank*, 108 F.3d 1325, 1326 (11th Cir. 1997).

The Carmichaels base their right to the three-year recision period on the contention that PCI failed to provide the information that §§ 1638(a)(4) and (a)(6) require. Because we have held as a matter of law that PCI did provide the requisite information, it follows that the Carmichaels

were not entitled to the extended recision period of § 1635(f).

### III.

We affirm summary judgment in favor of PCI.

A true Copy:

       Teste:

                            _____

                            *Clerk of the United States Court of*
                                 *Appeals for the Seventh Circuit*