# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-3984

SARAH HAMM,

*Plaintiff-Appellant,*

*v.*

AMERIQUEST MORTGAGE COMPANY,
AMERIQUEST MORTGAGE SECURITIES,
INC., and AMC MORTGAGE SERVICES, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 227—**Samuel Der-Yeghiayan**, *Judge.*

No. 06-3086

SHIRLEY JONES,

*Plaintiff-Appellee,*

*v.*

AMERIQUEST MORTGAGE COMPANY,
AMERIQUEST MORTGAGE SECURITIES,
INC., and AMC MORTGAGE SERVICES, INC.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 432—**David H. Coar**, *Judge.*

ARGUED APRIL 13, 2007—DECIDED OCTOBER 17, 2007

Before FLAUM, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.*    Plaintiffs Sarah Hamm and
Shirley Jones sued defendants Ameriquest Mortgage
Company ("Ameriquest"), Ameriquest Mortgage Securities,
Inc., and AMC Mortgage Services, Inc., in separate actions
brought under the Truth In Lending Act ("TILA"), 15
U.S.C. § 1640. Each of them claimed that Ameriquest, the
original lender, violated TILA by failing to state ex-
plicitly the payment period in the borrowers' TILA Dis-
closure Statements. In addition, each asserted that
Ameriquest's inclusion of a one-week rescission right
notice alongside the TILA-mandated three-day rescission
right notice violated TILA because it could cause borrowers
unknowingly to give up their TILA rescission rights. As
remedies, they claimed both damages and the right to
rescind their mortgages.

The two suits, though identical from a legal standpoint,
wound up before different district court judges; those
judges reached opposite results. In the Hamm action, the
district court granted summary judgment to the defen-
dants on both claims; Hamm appeals based only on the
theory of liability relating to the payment period. In the
Jones action, the district court granted summary judg-
ment to Jones based on Ameriquest's failure properly to
state the payment period; it denied both Jones's and
Ameriquest's summary judgment motions on the argu-
ment relating to the notice of a right to rescind, concluding
that material issues of fact remained on that claim.

On the surface, it would appear that the Jones action is
not yet resolved in the district court. However, we have
held that,

> once [a district court has] entered a judgment giving
> the plaintiff all the relief that it was seeking, the
> plaintiff's remaining ground merged in the judgment,
> which ended the case in the district court and there-

fore was appealable without the aid of Rule 54(b), even though, should such a judgment be reversed on appeal, the lawsuit would not be over, because the plaintiff had an alternative theory of liability.

*Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1183 (7th Cir. 1990). In short, a plaintiff can win only once, and so it does not matter how many other theories are left on the table if the claim itself has been resolved. The judgment of the district court, which is what we review, is final in Jones's case and thus ripe for appeal. Before this court, the defendants have addressed both theories of liability, while Jones argues that her allegation of defective notice of the right to rescind provides an alternative basis for affirming the district court's grant of summary judgment in her favor.

We conclude that the district court in the Jones action reached the correct result on the payment period theory of liability. That is enough to require reversal in Hamm's case and affirmance in Jones's case. We do not reach the issue concerning the notice of the right to rescind.

**I**

The facts in these two cases are not in dispute, and so we review them here only briefly. On January 19, 2002, Hamm entered into a loan transaction secured by a mortgage with Ameriquest. On March 13, 2002, Jones did the same thing. At closing, Hamm and Jones each signed a form entitled "Disclosure Statement" that listed a specific date as the due date for the first payment and another specific date for the final payment.

Neither Disclosure Statement ever says, in so many words, that payments will be made over a 360-month period of time. Instead, the relevant part of the forms looked like this (using Hamm's as the example):

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|
| 359 | $541.92 | 03/01/2002 |
| 1 | $536.01 | 02/01/2032 |

Elsewhere on the form it indicates the "Total of Payments," which in Hamm's case was $195,085.29 and in Jones's case was $172,766.38. At no place on either Disclosure Statement does the number "360" appear, nor is there any reference to "360 months," nor an indication that payments are to be made monthly. On the other hand, it does not take much calculation to realize that the time between the first entry in the third column and the last entry is just shy of thirty years, or 360 months. Both Hamm and Jones signed other documents that said things like "loan payments are required monthly" or that at least used the term "monthly" when referring generally to the required payments.

At their loan closings, Hamm and Jones also each received copies of a "Notice to Cancel" form and a "One Week Cancellation" form. The "Notice to Cancel" form states that TILA allows three days for a borrower to cancel a loan. The "One Week Cancellation" form informs the borrower that Ameriquest gives her a right to cancel for a full week. After the transactions were complete, Ameriquest Mortgage Company sold the mortgages to defendant Ameriquest Mortgage Securities; they are both serviced by defendant AMC Mortgage Services.

In the Jones action, the district court entered judgment against only defendant Ameriquest Mortgage Securities, Inc., after concluding that Jones filed her suit after the statutory deadline for relief other than rescission. It

dismissed the case as moot against the other two defendants. It also ordered Ameriquest to pay Jones's attorneys' fees and other costs. In the Hamm case, as we noted earlier, the district court entered judgment for Ameriquest.

## II

### A

We begin with the plaintiffs' complaint that the Disclosure Statements did not explicitly state the payment period of their loans, as required by TILA. We review a decision to grant summary judgment *de novo. Conn. Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 349 (7th Cir. 2003). In conducting our review, we look to the language of the statute, the implementing regulation ("Regulation Z," promulgated by Federal Reserve Board ("FRB")), and the relevant FRB Staff Commentary. TILA was written to serve more than each individual borrower's needs. Congress passed it to improve information in credit transactions and thus enhance the efficiency of credit markets, relying on "meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available" to achieve this goal. 15 U.S.C. § 1601(a).

Courts pay particular heed to the FRB Staff Commentary to TILA's regulations when evaluating an alleged TILA violation. The Supreme Court has held that "deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z [and] . . . [u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980). In keeping with *Milhollin*, this court has deferred to the views of the FRB, as expressed in the Commentary, when we are called upon to interpret TILA.

Our treatment of the commentary interpreting 15 U.S.C. § 1638(a)(6), the portion of TILA at issue in this case, is no exception. *Clay v. Johnson*, 264 F.3d 744, 748 (7th Cir. 2001).

TILA imposes an explicit requirement that a lender include "[t]he number, amount, and *due dates or period of payments scheduled to repay the total of payments*," in its Disclosure Statement to the borrower. 15 U.S.C. § 1638(a)(6) (emphasis added); see also 12 C.F.R. § 226.18(g)(1). The relevant section of the FRB commentary states that:

> To meet this requirement creditors may list all of the payment due dates. They also have the option of specifying the "period of payments" scheduled to repay the obligation. As a general rule, creditors that choose this option must disclose the payment intervals or frequency, such as "monthly" or "bi-weekly," and the calendar date the beginning payment is due. For example, a creditor may disclose that payments are due "monthly beginning on July 1, 1988." This information, when combined with the number of payments, is necessary to define the repayment period and enable a consumer to determine all of the payment due dates.

Supp. I, para. 18(g)(4)(I); 63 Fed. Reg. 16673. An "Exception" section immediately follows and allows some flexibility in the narrow situation where the first date of the lending period is unknown at the time the loan is issued. Supp. I, para. 18(g)(ii). This rule and exception are all that the commentary has to say about § 226.18(g)'s requirement to disclose the payment period. The FRB's interpretation does not strike us as so irrational that we would be required to disregard it. We conclude, therefore, that TILA requires a lender to state clearly on the Disclosure Statement either the due dates or period of payments

scheduled. The question is whether TILA is satisfied if the form provides only enough information from which the consumer might infer either the due dates or the payment period.

TILA's purpose is achieved by promoting uniformity in credit documents. Atypical terms and forms can confuse borrowers, leading them to agree to credit products that they might have rejected had they understood them properly. For that reason, TILA requires that many items of information be disclosed in specified ways. If a lender does not disclose one such piece of information in the specified way, leaving the borrower to make assumptions, then TILA has been violated. "[W]hether a particular disclosure is clear for purposes of TILA is a question of law that 'depends on the contents of the form, not on how it affects any particular reader.'" *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) (citing *Smith v. Check-N-Go of Ill., Inc.*, 200 F.3d 511, 515 (7th Cir. 1999)). It is immaterial if the borrower in a particular transaction made the right assumptions about the terms and documents presented to her, if the form otherwise does not comply with the statute and regulations.

We have held that, when it comes to TILA, "hyper-technicality reigns." *Handy*, 464 F.3d at 764. (This is not, we recognize, the formulation that some of our sister circuits use. See, *e.g.*, *Santos-Rodriguez v. Doral Mortgage Corp.*, 485 F.3d 12, 17 n.6 (1st Cir. 2007) (noting the difference between our standard and that of other circuits)). Our decision on the adequacy of Ameriquest's disclosure of the payment period depends on just how picky we think the statute is. The Supreme Court has held that "[t]he concept of 'meaningful disclosure' that animates TILA . . . cannot be applied in the abstract. Meaningful disclosure does not mean more disclosure. Rather, it describes a balance between competing considerations of complete disclosure . . . and the need to

avoid . . . [informational overload]." *Milhollin*, 444 U.S. at 568 (internal quotation marks and citations omitted). Following *Milhollin*'s guidance, our approach means that when completeness of disclosure does not lead to informational overload, completeness must be required. Rhetoric to one side, this leads to an outcome that is fairly similar to the one reached in our sister circuits.

We also strike the balance this way because the FRB specifically rejected our attempts at a more functional approach to TILA violations. In *Carmichael v. Payment Ctr., Inc.*, 336 F.3d 636, 641 (7th Cir. 2003), we held that "courts are to evaluate § 1638(a)(6)'s strictures functionally, not in formalistic manner [*sic*]." Shortly after we issued the *Carmichael* decision, the FRB amended its commentary to avoid exactly the kind of result we reached in *Carmichael*; it noted that our decision was the impetus for its action. The crux of the revised commentary is that when a specific requirement is straightforward, lenders should not be able to dance around it in their disclosures. In other words, the FRB opted for hypertechnicality.

B

In this case, Ameriquest cannot escape the fact that it committed a technical TILA violation by failing explicitly to state the payment period of Hamm's and Jones's loans on the Disclosure Statements. We do not doubt that many (or most) borrowers would understand that a mortgage with 360 payments due over approximately 30 years contemplates a payment by the borrower each month during those 30 years. But unfortunately for Ameriquest, the Disclosure Statements do not say that; they do not even say that the transaction is for a "360-month loan" or anything similar. All they say, as the table we have provided above illustrates, is that 359 payments

have to be made; the first one is due on a particular date, and after all 359 payments are made, one more payment in a slightly different amount will be due on another particular date. The latter date happens to fall about 30 years after the first due date. A borrower reading this form alone would have to make assumptions and take some steps in order to determine her payment period. She could not, for example, simply postpone payments 2-359 until approximately the last year of the loan and make one payment per day. The borrower would instead have to assume that her payments were evenly spaced over the 30 years and that each payment was due on the first of the month.

By contrast, punctilious compliance with TILA would require only that the Disclosure Statement contain the word "monthly" alongside the number of payments. This would be neither burdensome for the lender nor so detailed that the borrower would be buried in information. It serves both the goals of TILA and the needs of the borrower. As we have already noted, other forms provided to Hamm and Jones referred to a "monthly" payment period, but nowhere on the Disclosure Forms was this fact mentioned. Not on the front page, not on the back page, not even in "fine print." TILA does not require people to dig through a raft of forms and make assumptions about which one is accurate and which trumps another. If the Disclosure Forms provided to Hamm and Jones had mentioned the "monthly" nature of the payments at all, we would have a different case here altogether.

Still, Ameriquest urges us to find that there are ambiguities in the statute, Regulation Z, and the Commentary that would absolve it of its obligation to disclose the payment period. For example, the Commentary refers to the explicit disclosure of the pay period or scheduled payment due dates as a "general rule." Ameriquest inter-

prets this to imply that there are other, unstated ways to satisfy the disclosure requirement. However, "[a] statute and its implementing regulations should be read as a whole and, where possible, afforded a harmonious inter-pretation." *Carmichael*, 336 F.3d at 640. Here, they are easily and best read to reinforce an explicit disclosure requirement that can be made in just one of two ways, and that recognizes one narrow exception to that rule.

Ameriquest also argues that the lack of the phrase "using that term" in § 1638(a)(6) means that it is unclear what exactly constitutes a proper disclosure of the pay-ment period. It is true that in other sections of TILA, a lender is required not just to make a particular disclosure, but also to make that disclosure using a particular term. See 15 U.S.C. § 1638(a)(3) (requiring disclosure of the "finance charge" and that the disclosure "us[e] that term"). The TILA sections that command the use of a particular term, however, are different from the disclosure require-ment imposed by § 1638(a)(6) in a critical way.

TILA requires the use of a designated term for items that might not otherwise be identifiable to a borrower if not labeled in a consistent way, such as "finance charge," "total of payments," and "annual percentage rate." See 15 U.S.C. § 1638(a). By contrast, the word "monthly" or "bi-weekly" does not need to be labeled as a "payment period" in order to be understood by a borrower. That seems to be precisely the type of information overload that *Milhollin* sought to avoid. The difference is made clear by § 1638(a)(8), which requires that the lender provide "[d]escriptive explanations of the terms 'amount financed,' 'finance charge,' 'annual percentage rate,' 'total of pay-ments,' and 'total sale price' as specified by the Board" and also "us[e] th[ose] terms." These special terms not only have to be used, but also have to be explained. Thus, the requirement to use a specified term is one mechanism that TILA uses to ensure uniformity; there is no neces-

sary implication that other aspects of the statute require the same treatment. Section 1638(a)(1), for example, requires disclosure of the "identity of the creditor required to make disclosure," but does not require the lender to use the exact term "identity." That does not mean the identity requirement can be satisfied through implication alone, nor would any lender expect that to be the case.

We emphasize that we are not holding that a Disclosure Form that fails to use the magic word "monthly" will always fail to comply with the requirement in § 1638(a)(6) of disclosing the payment period. The Commentary itself lists "monthly" and "bi-weekly" only as two examples of the way in which a lender might comply with the rule. The key point is that the borrower should not have to make any assumptions; she should be told her payment period in explicit terms. (For example, a Disclosure Statement that said "payment is due on the first of every month from March 1, 2002, through January 1, 2032," would effectively tell the borrower that her payment period is monthly without using the word "monthly.") Because Ameriquest's form required such an assumption, it did not meet TILA's requirements.

**III**

At one level, it may seem unrealistic to think that Hamm and Jones did not realize that they were obligated to make monthly payments on their 30-year mortgages. Nonetheless, in today's diversified credit markets, such assumptions are not always well founded. There are many credit products now where the borrower pays nothing for a year or two and then begins regular payments, or where payments are clumped together for a time, to be followed by a balloon payment, or where the loan is structured in other ways to induce the borrower to patronize a particular

lender or to facilitate a transaction for a cash-strapped borrower. Here, Hamm and Jones could not look at the Disclosure Statement and know with certainty how often their payments were due, without additional information. That is the information that TILA required Ameriquest to furnish, but that it did not.

Ameriquest has not offered any reason to conclude that TILA's requirement that the Disclosure Statement include explicit information about the payment period did not apply here or that its forms complied with the rules. Ameriquest violated TILA, even if unintentionally, and the plaintiffs are entitled to relief. We AFFIRM the district court's grant of summary judgment against Ameriquest Mortgage Securities, Inc., in Jones's case. We REVERSE the district court's grant of summary judgment for defendant Ameriquest Mortgage Securities, Inc., against Hamm and hold that the district court must enter judgment in favor of Hamm against that company. Summary judgment in favor of Ameriquest Mortgage Company and AMC Mortgage Services, Inc., is proper in both cases, and we AFFIRM both district courts to that extent. Finally, we REMAND these cases for further proceedings consistent with this opinion.

A true Copy:

      Teste:

 

 

                _____
                *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*