GRABER, Circuit Judge,
concurring in part and dissenting in part:
I respectfully concur in part[1] and dissent in part.
The district court dismissed this case on the pleadings, reasoning that the required disclosure sufficed as a matter of law. The majority holds that the disclosure is inadequate as a matter of law. In my view, the clarity of the disclosure should be considered an issue of fact for the trier of fact. While a finder of fact could conclude, as the majority does, that the disclosure was unclear, for the reasons explained below I think that a finder of fact also could conclude that the disclosure was clear.
Defendant Capital One Bank told Plaintiff Raquel Rubio that she could apply for a credit card at “a fixed rate of 6.99%.” Approximately three and a half years after Plaintiff obtained a Capital One credit card carrying the 6.99% rate, Defendant raised the annual percentage rate (“APR”) to 15.9%. Defendant increased the APR because market interest rates had risen, rather than because of any irregularities in Plaintiffs payments or her use of the account. Was there a clear and conspicuous disclosure of the potential for raising the APR, for the purposes of the Truth In Lending Act (“TILA”), when the solicitation advertised “a fixed rate of 6.99%” but stated on the same page that the rates and fees were “subject to change”? In my view, there was.
In 2004, Defendant mailed Plaintiff a solicitation to open a credit card account. The solicitation began:
YOU HAVE BEEN PRE-SELECTED FOR THIS OFFER FOR A CAPITAL ONE PLATINUM MASTERCARD FEATURING A LOW 6.99% FIXED APR ON BALANCE TRANSFERS AND PURCHASES, A CREDIT LINE UP TO $20,000* AND NO ANNUAL MEMBERSHIP FEE. THIS IS NOT AN INTROD UCTORY RATE!
*1207 The solicitation repeatedly referred to the 6.99% APR as “fixed.” The “Schumer box,” an informative table required by federal regulations, described the “ANNUAL PERCENTAGE RATE (APR) for purchases* ” as “A fixed rate of 6.99%.” The asterisk directed the reader lower on the page, where the solicitation stated:
Farther down on the same page, the “TERMS OF OFFER” included this provision: “I will receive the Capital One Customer Agreement and am bound by its terms and future revisions thereof. My Agreement terms (for example, rates and fees) are subject to change.”
Plaintiff responded to the credit card solicitation and, in March 2004, she received a cardholder agreement from Defendant. The agreement similarly provided that Defendant reserved the right to “amend or change any part of your Agreement, including periodic rates and other charges, or add or remove requirements ... at any time.” In August 2007, Defendant mailed Plaintiff a notification that the APR on her credit card was about to increase to 15.9% unless she halted her use of the card and made no further charges on it. The notice explained the change in the future lending rate as simply a response to changing market interest rates. “In light of rising interest rates over the past few years and the rate currently applied to your account balance, the APRs on your account are about to increase.”
We have construed TILA and Regulation Z to prohibit disclosures that are either inconspicuous or opaque to a reasonable consumer. “Clear and conspicuous disclosures ... are disclosures that a reasonable cardholder would notice and understand.” Barrer v. Chase Bank USA N.A., 566 F.3d 883, 892 (9th Cir.2009) (emphasis added). Our inquiry is not whether additional disclosure would be useful to consumers but, rather, whether the disclosures that were made complied with the requirements of TILA and Regulation Z. Hauk v. JP Morgan Chase Bank USA 552 F.3d 1114, 1121 (9th Cir.2009).
In other words, here, is the disclosure accurate and clear?[2] In my view, a reasonable trier of fact could find that it is. The term “fixed” accurately describes an interest rate that is not linked to an external index and is not designed to expire or reset automatically at any particular point in time. The commentary to Regulation Z distinguishes between a “fixed-rate account” and a “variable-rate account.” See 12 C.F.R. pt. 226 supp. I, para. 5a(b)(l), *1208 cmt. 5 (contrasting disclosures required for the different types of accounts). A “variable-rate account” is one in which “rate changes are part of the plan and are tied to an index or formula.” Id. at cmt. 2. By implication, then, a fixed-rate account is one that does not share those characteristics. The account advertised by Defendant here did not feature rate changes tied to an index or formula as a part of the credit plan. That is, it was a fixed-rate account. The disclosure was accurate in describing the rate as “fixed.”
Nor did Defendant’s general reservation of rights — the provision stating that rates and fees were subject to change — transform the accurate term “fixed” into an inaccurate disclosure. 12 C.F.R. pt. 226, supp. I, para. 6(a)(2), cmt. 2. The account still did not involve pre-planned rate changes, even if Defendant retained the right to adjust the rate later in response to general market conditions.[3] The disclosure was accurate.
The crux of this dispute, then, is the clarity of the disclosure. Would a reasonable consumer understand that Defendant may alter the “fixed” APR because market conditions change? In my view, this should be a question of fact. Moreover, I conclude that a fact-finder reasonably could find that the answer to the question is “yes” because, on the same page as the statement of the 6.99% fixed rate, the solicitation informed the consumer that “Agreement terms (for example, rates and fees) are subject to change.” That is to say, a factfinder permissibly could find that a reasonable consumer would understand from the disclosure here that the “fixed” APR might go up or down in the future.
An average consumer might well understand that a “fixed” rate on a credit card does not mean that the rate is “permanent” or “forever” when the issuer expressly and simultaneously reserves its right to “change” its “rates” later. Reasonable consumers know that interest rates fluctuate — sometimes dramatically— over time; no reasonable consumer expects that short-term borrowing rates will remain static forever. Reasonable consumers might well understand that, as market conditions change, the APR available from a credit card company that has explicitly reserved its right to adjust rates prospectively may change as well.[4]
Plaintiff contends that a reasonable consumer, even if aware that the fixed rate was not guaranteed permanently, would be confused by the solicitation’s list of three conditions that would trigger a higher *1209 APR. Plaintiff argues that the customer reasonably might think that those three conditions are the only ones that permit a rate increase. A reasonable trier of fact could find this argument unpersuasive.
First, the statement that the APR is “subject to change if any of the following conditions (‘Conditions’) occur” notably lacks a qualifying term such as “only,” “exclusively,” or “solely.” An average consumer might well understand the difference between saying that her rate will increase if she misses a payment and saying that her rate will increase only if she misses a payment.
But more importantly, a reasonable consumer would not necessarily believe that a “fixed APR” on a credit card whose issuer has reserved its right to change rates is a promise to keep the same interest rate forever so long as the cardholder behaves well. The warning that specific undesirable acts by the cardholder will lead to a higher interest rate does not necessarily suggest that the account will otherwise be shielded from global economic conditions.
What, then, should the result be when the majority’s proposed understanding of the disclosure’s clarity is not the only reasonable understanding? In my view, the better answer to that question is to remand the case for fact-finding.
There seems to be a circuit split regarding the question whether the clarity of a disclosure is a question of law or fact. The Seventh Circuit holds that this is a question of law. Hamm v. Ameriquest Mortgage Co., 506 F.3d 525, 529 (7th Cir.2007).[5] By contrast, the Third Circuit, in a case on which the majority relies heavily in other respects, appears to treat the clarity of a disclosure as a question of fact.[6]
In Roberts v. Fleet Bank (R.I.) National Ass’n, 342 F.3d 260, 263 (3d Cir.2003), a consumer received a solicitation advertising a “7.99% Fixed APR,” which stated that the APR was “NOT an introductory rate” and that “[i]t won’t go up in just a few short months.” There, the issuer raised the cardholder’s rate after 13 months. Id. at 264. As in this case, the Roberts solicitation listed two specific circumstances in which the fixed rate would increase — failure to meet payment requirements and closure of the account — and neither of those events had occurred. Id. at 263-64.
In Roberts, the Third Circuit “recognize[d] that a fixed rate is not necessarily *1210 permanent.” Id. at 268 n. 3. But it held that the solicitation could lead a reasonable consumer to be “confused about the temporal quality of the offer” and to conclude that rates “are subject to change only for the two reasons outlined.” Id. at 268. As a result, the court held “that a question of fact exists as to whether Fleet made any misleading statements in the mailing” and whether it failed to disclose information clearly, as TILA requires. Id. at 269 (emphasis added).
The majority’s reliance on evidence outside the pleadings underscores the appropriateness of fact-finding in a case such as this. The majority relies on the results of research done two years after Defendant sent the solicitation at issue here. The evidence on which the majority relies consists of an executive summary of three rounds of interviews with a total of 25 individuals who were shown mock credit card solicitations. See Macro Int’l Inc., Design and Testing of Effective Truth in Lending Disclosures, app. A, tbl. 1 (2007), available at http://www.federalreserve.gov/ dcea/regulationz/0523/summary.pdf [hereinafter Executive Summary] (showing that researchers interviewed nine consumers in Baltimore, nine in Kansas City, and seven in Denver). This small sample of consumers was not intended to be — and was not— representative of the card-holding public, even though the majority is correct that it was intended to represent the range of those consumers.[7] Id. at 17, app. A. The executive summary does not reveal how many of the consumers in two rounds of the interviews misinterpreted the term “fixed” as used in the experimental solicitations. Compare id. at 22 (stating that six participants in Kansas City misunderstood the term), with id. at 10, 30 (stating that “most participants” in Baltimore and in Denver misunderstood the term). Thus, the majority accepts what may be as few as 15 unrepresentative consumers as “persuasive.” Maj. op. at 1200-01. I am dubious of that assessment.[8]
Furthermore, I am concerned by such heavy reliance on evidence that has bypassed the adversarial process. No party mentioned this research in briefing or at oral argument. Consequently, we are entirely ignorant of whether there are other flaws in the study that Defendant might bring to our attention if it had the opportunity to do so. Nor do we know if other research has yielded countervailing results.
Nothing in the former regulations suggested that the agency deemed the term “fixed” to be misleading. The researchers *1211 initially included it in their experimental solicitations, and none of the “key research questions” listed in the executive summary suggests that these experts suspected that the term would be misunderstood. Executive Summary at 2-3. In fact, even the researchers seem to have been surprised by their results regarding the term: they were slower to remove the term from subsequent rounds of interviews than they were to act on some of their other findings. The researchers continued to use the term “fixed” for three rounds of interviews, id. at iii, while they made several other changes to the experimental solicitations after the first and second rounds of interviews, id. at 14, 26-27.
In summary, a reasonable trier of fact could find that Defendant’s solicitation accurately, conspicuously, and clearly disclosed the terms of its credit card account. What happens in an insurance bad-faith ease (to take just one example) when the pleadings (or summary judgment documents) allow a reasonable trier of fact to find either bad faith or good faith denial of coverage? The case proceeds to trial. The same is true for unfair trade practices, medical negligence, punitive damages, and nearly every other kind of claim — that is, whether or not the claim is^ statutory, and whether or not it involves assessing someone’s state of mind.
■ In most areas of law, then, when reasonable minds can differ about a factual conclusion, an appellate court does not substitute itself for a finder of fact. I would apply the usual rule to the question of clarity of a TILA disclosure. I would, therefore, hold that the pleading is sufficient to state a claim but that issues of fact remain for resolution on remand.

. I agree with the majority that the solicitation did not constitute an offer. Plaintiff argues that California law governs the parties’ agreement. But even under California law, "[a]n offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Donovan v. RRL Corp., 26 Cal.4th 261, 109 Cal.Rptr.2d 807, 27 P.3d 702, 709 (2001) (emphasis added) (internal quotation marks omitted). Here, the solicitation made it clear that sending in the application did not, by itself, consummate the agreement. The solicitation listed a number of contingencíes under which Plaintiff's application could be rejected. See Lopez v. Charles Schwab & Co., 118 Cal.App.4th 1224, 13 Cal.Rptr.3d 544 (2004) (holding that an application containing the statement, “I hereby request that [the defendant] open a brokerage account,” did not create an enforceable contract).
In addition, because I too would hold that Plaintiff has stated a TILA claim — although I would decline to hold that the disclosure is clear as a matter of law — I agree with the majority that the district court erred by dismissing the California unfair competition claim.

 All your Annual Percentage Rates (APRs) are subject to increase if any of the following conditions (“Conditions”) occur: (i) you fail to make a payment to us when due; (ii) your account is over-limit; (iii) or your payment is returned for any reason. All APRs will change with the beginning of the billing period after the period in which the condition occurred. The first time any of the Conditions occur, your purchase and special transfer APRs (if applicable) may be increased to a rate of 12.9% ANNUAL PERCENTAGE RATE (0.03534% daily periodic rate). If any of the Conditions occur twice within any 6-month period, all of your APRs may be increased to a rate of 25.9% ANNUAL PERCENTAGE RATE (0.07096% daily periodic rate).

. Plaintiff's brief does not argue that the disclosure is inconspicuous. In Barrer, we held that a disclosure was not conspicuous when “the change-in-terms provision appear[ed] ... five dense pages after the disclosure of the APR” and was “neither referenced in nor clearly related to the 'Finance Terms’ section.” 566 F.3d at 892. Here, the APR disclosure and the general reservation of rights appear on the same page, in a legible font. A reasonable consumer would have noticed them; they are conspicuous.

. The general reservation clause was permissible and need not have explained that Defendant might change the APR if market conditions changed. The commentary to Regulation Z anticipates that credit agreements may contain a general reservation clause. 12 C.F.R. pt. 226, supp. I, para. 6(a)(2), cmt. 2. And adequate disclosure under Regulation Z does not require that creditors must "specify the general circumstances under which they anticipate!] changing terms.” Barrer, 566 F.3d at 891 n. 9.

. Indeed, when Defendant formerly sought to entice customers to open an account with precisely that "forever” feature, it described the credit in very different terms. Fifteen years ago, Defendant advertised a card with a "Lifetime APR” and told consumers that they would "receive a low fixed APR of 10.9% — for life!” DeMando v. Monis, 206 F.3d 1300, 1301-02 (9th Cir.2000) (emphasis omitted). The solicitation trumpeted: "You will keep this low fixed rate as long as your account remains in good standing.... !Y]ou will never have to shop for another credit card again!” Id. at 1302. By contrast, the solicitation at issue here lacks any reference to keeping the advertised interest rate "for life” or for the consumer’s "lifetime,” nor does it promise that the rate will stay the same "as long as” the account remains in good standing.

. Although we have held that conspicuousness of a TILA disclosure is a question of law, Am. Gen. Fin., Inc. v. Bassett (In re Bassett), 285 F.3d 882, 885 (9th Cir.2002), we have not addressed how to treat the clarity of a disclosure. The reasons why we treat conspicuousness as a question of law do not compel us to treat clarity similarly. In In re Bassett, we borrowed the definition of conspicuousness from the Uniform Commercial Code ("UCC”). Id. at 884. The UCC expressly provides that conspicuousness is a decision for the court. U.C.C. § l-201(b)(10). I am aware of no comparable UCC provision regarding clarity. We also explained in In re Bassett that “subjecting conspicuousness to fact-finding would introduce too much uncertainty into the drafting process.” 285 F.3d at 885. Whether or not it is actually true that a court's determination regarding conspicuousness is more predictable than a fact-finder's, it is manifestly not true with respect to clarity. The assessment of a reasonable consumer’s understanding of a disclosure would be more accurate— and hence more predictable — if made by an informed fact-finder than if made by a court in the abstract.

. In Rossman v. Fleet Bank (R.I.) National Ass’n, 280 F.3d 384, 394-95 (3d Cir.2002), the Third Circuit implicitly treated the accuracy of a disclosure as a question of law. But the court did not discuss that issue, and it is not clear whether the court held that the disclosure was inaccurate because, in that record, no issue of fact existed or, instead, because the issue is always one of law.

. A representative sample is one in which the frequency or distribution of some trait corresponds to that trait's frequency or distribution in the population being sampled. See McGraw-Hill Dictionary of Scientific and Technical Terms 1789 (6th ed. 2002) (defining “representative sample’’ as "[a] sample whose characteristics reflect those of the population from which it is drawn”). To illustrate the distinction, consider 'that a representative sample of college students would contain primarily individuals between 18 and 30 years of age, because most college students are young adults. By contrast, a sample that represented the range of college students might be made up of a precocious fourteen-year-old, a conventional nineteen-year-old, and an energetic senior citizen. Research on the former, representative sample would predict more accurately the behavior of college students because fourteen-year-olds and senior citizens are relatively uncommon among college students.

. My discomfort is not assuaged by the fact that the Federal Reserve Board of Governors later cited this research to justify regulating use of the term "fixed.” 74 Fed.Reg. 5244, 5272, 5372-73 (Jan. 29, 2009). The evidence that underlies a minor prospective change need not always be as persuasive as that required to hold a credit card company liable for its past actions.